445 A.2d 492

**FARMERS TRUST COMPANY, Trustee under Agreement with Fleeta Bosler Bashore**

v.

**Herman B. BASHORE, Fleeta B. Matza, Kirk Bashore, Joanne Thomas, Linda Kitazaki, Joseph L. Matza, and Chester L. Moses.**

**Appeal of Chester L. MOSES.**

Supreme Court of Pennsylvania.

Argued April 19, 1982.

Decided May 21, 1982.

148

Jack M. Stover, Harrisburg, for appellant.

Ronald E. Johnson, Carlisle, for Farmers Trust Co.

William H. Nast, Jr., Harrisburg, for Joseph L. Matza, et al.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

In 1915 settlor Fleeta Bosler Bashore and her husband created an irrevocable trust that would provide income to settlor for life and, after her death, would benefit her children and grandchildren. All three of settlor's children, appellee Herman B. Bashore, appellee Fleeta B. Matza, and Margaretta B. Moses, were living at the time of settlor's death in 1952. In accordance with the terms of the trust, trustee Farmers Trust Company then began making periodic income payments to each of the three children. Upon the death of settlor's child Margaretta B. Moses in 1979 the

present dispute arose between appellees, settlor's two surviving children and their children, and appellant Chester L. Moses, the sole child, by adoption, of Mrs. Moses.[1] Appellant seeks to succeed by representation to his mother's share of trust income.

The trustee filed a petition for declaratory judgment in the Court of Common Pleas of Cumberland County, Orphans' Court Division. The orphans' court concluded that the income distribution clause of the trust instrument demonstrates settlor's intent to benefit, in addition to her own children, only those grandchildren who are children of a child who died before her. Because appellant's mother was a child of settlor who died after settlor, the court held that appellant is not entitled to share in the distribution of income and that income is to be divided exclusively between the two surviving children. We disagree with the orphans' court and conclude that settlor intended income to be distributed to the children of each of her children who should die prior to the death of her last child, in accordance with her intent to treat each of her children's lines equally in the distribution of the trust.

■■■ The disputed paragraph of the trust instrument provides:

"AND IN FURTHER TRUST, at the death of said Fleeta Bosler Bashore, to pay the net income to her surviving children and to the children of her children who have previously died, in equal shares per stirpes, so long as any of her children is living, free from anticipation, and not subject to the claims or demands of any creditors or other persons whomsoever; and upon the death of her last surviving child, in trust to convey and transfer the corpus of the estate to her grandchildren per stirpes, the children of any deceased grandchild to take their parent's share; and in default of any child or other direct descendant surviving her, then to convey and transfer the said corpus as she shall by last will in writing direct; and in default of such will, then to convey and transfer said corpus to the

1. Appellant was adopted at some time before his second birthday.

next of kin of said Fleeta Bosler Bashore, of the blood of her father, under the intestate laws of the State of Pennsylvania."

Viewed in isolation, settlor's direction that trust income be paid "to the children of her children who have previously died" lends support to appellees' claim that settlor intended to exclude from trust income all grandchildren except those who were children of children who should die "previous" to settlor. However, in the ascertainment of a settlor's intent, it is fundamental that a clause must be read not in isolation but in the context in which it appears. See, e.g., *Hill Estate*, 432 Pa. 269, 247 A.2d 606 (1968); *Clark Estate*, 359 Pa. 411, 59 A.2d 109 (1948). A settlor's intent is to be determined from all the language within the four corners of the trust instrument, the scheme of distribution and the circumstances surrounding the execution of the instrument. Only if a settlor's intent cannot be ascertained with reasonable certainty will a court apply canons of construction, to attribute a reasonable intention to the settlor in the circumstances. See, e.g., *Estate of Houston*, 491 Pa. 339, 421 A.2d 166 (1980); *Matter of Tracy*, 464 Pa. 300, 346 A.2d 750 (1975).

The beginning of the disputed paragraph makes clear settlor's intent that if, as in fact occurred, all of settlor's children survived her, each was to receive an equal share of income. At the end of the paragraph, settlor makes clear that upon the death of her last surviving child, each line of her grandchildren is to take an equal, stirpital share of trust principal. Additionally, if any grandchild has died before the time of distribution of trust principal, the children of that grandchild are to receive his share by representation.

Thus, settlor's scheme of distribution is to treat the lines of her children equally when all of her children are alive and when all of her children are dead. Settlor's intent as to disposition of income in the present situation, where some but not all of settlor's children are living, must be ascertained in the light of this distributive plan.

If, as appellees urge, settlor's intent were to be construed as providing for a grandchild to receive income only if he is

the child of a child who dies before settlor, a grandchild would share in trust income if his parent (settlor's child) died the day before settlor's death. He would not share in trust income if his parent died the day after settlor's death. Accordingly, during the income distribution period, income payments would initially be made in one-third shares divided among all of settlor's three children, with any predeceased child's one-third share passing to his children by representation. However, upon the death of each child who happened to survive settlor, that child's one-third share of income would not pass to his children, but instead would be divided among the initial takers who were still living. Thus, the children of the first child to die after settlor's death would receive no trust income. Instead, the deceased child's share would inure to the benefit of the two surviving children (appellees), increasing each of their shares of income one and one-half times, from 33⅓% to 50% of trust income, until a second child died. At that time, the children of the second child to die also would receive no trust income. Instead, the child who happened to outlive the others would receive 100% of trust income for the rest of his or her life. Only upon the death of this last surviving child would children of children who had previously died be benefited by the trust, at which time each line of grandchildren would receive an equal, stirpital share of the trust principal.

■ Appellees have not advanced any reasonable basis for attributing to settlor the intent to abandon, during the intermediate period of trust income distribution, the scheme of equal distribution among her children's lines that she established to govern the initial distribution of trust income and the final distribution of trust principal. Appellees rely upon settlor's stated purpose to make "provision for the support and maintenance of said Fleeta Bosler Bashore and her children" to argue that settlor was primarily concerned for her children's support and maintenance. From this proposition appellees argue that settlor did not intend grandchildren in appellant's position (the child of a child who died after settlor) to share in trust income because

"[p]ayment of income to a grandchild diminishes the income to the surviving children, thereby diminishing the ability of the fund to provide support, maintenance and benefits to each surviving child . . . ." Contrary to appellees' argument, however, inclusion of appellant in the distribution of trust income would in no respect diminish appellees' share of trust income: settlor's two surviving children would each continue to receive the same one-third share of income that each received while appellant's mother was living.[2]

■ Nowhere in the trust instrument does settlor demonstrate an intent to disadvantage those grandchildren whose parent (settlor's child) is no longer living in order to increase her living children's shares of trust income. Thus, to interpret settlor's inclusion in trust income of "children of children who have previously died" as restricting the class of grandchildren who may receive income to those whose parent (settlor's child) happens to die before settlor's death would be to impute an element of arbitrariness to settlor's otherwise even-handed scheme of distribution. When the language, "in further trust, at the death of said Fleeta Bosler Bashore, to pay the net income to her surviving children and to the children of her children who have previously died . . . so long as any of her children is living," is read not in isolation but in the context of settlor's entire

2. Appellees' reliance upon 20 Pa.C.S. § 6114(2) is misplaced. That section provides: "In the absence of a contrary intent . . . [i]n construing a conveyance to a class . . . the class shall be ascertained at the time the conveyance is to take effect in enjoyment." See also 20 Pa.C.S. § 2514(5) (similar provision for wills). This rule of construction operates to close a class only when a member of the class is entitled to distribution of the principal. As this Court stated in *McDowell Nat'l Bank of Sharon v. Applegate*, 479 Pa. 300, 308–09, 388 A.2d 666, 670 (1978),

"Although beneficiaries living at the time of testator's death have a vested interest in current trust income, the class may still remain open after testator's death for purposes of determining membership in the class receiving the principal upon distribution and income earned until distribution of the principal.

'Where there is a gift of income . . . no inconvenience is experienced by admitting new members to the class after distribution has begun.' *Will of Dow*, [55 A.D.2d 323, 334, 390 N.Y.S.2d 721, 729 (App.Div. 4th Dept. 1977) ]."

distributive plan, it must be concluded that settlor intended income to be paid to the children of each of settlor's children who dies at any time previous to the end of the period when "any of her children is living," that is, at any time during the income distribution period.[3]

■ Appellees' final argument is that appellant should not be permitted to take because he is an adopted child. In appellees' view, settlor's intention to exclude adopted children is "clearly indicated" in the default provision of the trust instrument at the end of the disputed paragraph. There, settlor directs the trustee,

"in default of any child or other direct descendant surviving her, then to convey and transfer the said corpus as she shall by last will in writing direct; and in default of such will, then to convey and transfer said corpus to the next of kin of said Fleeta Bosler Bashore, of the blood of her father, under the intestate laws of the State of Pennsylvania."

Settlor's provision that, if all previous directions should fail, the corpus is to be conveyed to her next of kin "of the blood of her father" cannot reasonably be read as demonstrating an intent on the part of settlor to convey the trust income or principal solely to blood relatives. This default provision takes effect only if no "direct descendant" is alive at the time of corpus distribution and settlor has not made an alternative disposition by will. See *Estate of Sykes*, 477 Pa. 254, 383 A.2d 920 (1978) (limited power of appointment to "blood relatives" not a limitation on class to whom corpus would pass in default of exercise of power of appointment). See also *Collins Estate*, 393 Pa. 519, 143 A.2d 45 (1958) (gift to "descendants" includes adopted children).

**3.** Although we find settlor's language to be unambiguous in the context of the entire trust instrument, we note that, even if settlor's language were ambiguous in context, our canons of construction would mandate the same conclusion. See, e.g., *Estate of Clarke*, 460 Pa. 41, 51, 331 A.2d 408, 413 (1975) ("when the language of a will is amenable to more than one interpretation, 'the law favors a construction which will work equality of distribution among those standing in the same relation to the testator' ") (citing cases).

■ Where it cannot be concluded with reasonable certainty whether a settlor has intended to include or exclude adopted children, the settlor is presumed to include all children, whether children by adoption or by blood descent. This canon of construction, applied in *Tafel Estate*, 449 Pa. 442, 296 A.2d 797 (1972) (plurality opinion) (bequest to "children"), and reaffirmed in *Estate of Sykes*, 477 Pa. 254, 383 A.2d 920 (1978) (bequest to "issue"), attributes a reasonable intent to settlor, whose trust instrument indicates no clear intent with regard to adopted children.[4]

Decree reversed and record remanded for entry of an appropriate decree consistent with this opinion. Costs on the trust.

4. Appellees cannot prevail on their theory that because the canon of *Tafel* and its progeny is based on a construction of the Wills Act of 1917, Act of June 7, 1917, P.L. 403, § .16(b), 20 P.S. § 228 (1950), that canon has no application to settlor's inter vivos trust instrument executed in 1915. *Tafel* repudiated and *Sykes* expressly overruled *Fownes Trust*, 421 Pa. 476, 220 A.2d 8 (1966), where the Court had held at common law that an adopted child was not included in a gift of income to "issue" contained in an inter vivos trust instrument. Because our decision is based on common law, the fact that settlor's trust instrument was executed before enactment of the Wills Act of 1917 is of no consequence.