506 A.2d 530

Elizabeth Ellen Lang, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued October 10, 1985, before Judges CRAIG and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Foster S. Goldman, Jr.*, with him, *Vernadean S. Passodelis, Berkman, Ruslander, Pohl, Lieber & Engel*, for petitioner.

*Jean E. Graybill*, Assistant Counsel, with her, *Edward P. Carey*, Regional Counsel, *John Kane* and *Roger T. Margolis*, for respondent.

OPINION BY JUDGE PALLADINO, March 21, 1986:

Elizabeth Lang (Trustee) appeals from a decision of the Department of Public Welfare (DPW) which held that the income and principal of a testamentary trust were available resources for William LeViseur (Beneficiary) and assessed liability for payment for medical care against the trust. For the reasons set forth below, we affirm.

The Beneficiary is an incompetent adult suffering from "idiopathic epilepsy" and "mental deficiency." He has resided in state school and hospital facilities the majority of his life, and currently resides at the Western Center, in Canonsburg, Pennsylvania. From 1946 to 1968, Edward LeViseur, Sr., the Beneficiary's father, paid the costs of maintaining the Beneficiary at the state facilities.[1] In 1968, Edward LeViseur, Sr. (Testator) died, leaving a will under the terms of which a trust was created for the benefit of the Beneficiary and his three siblings. The language of the will provided:

---

[1] From 1946 to 1966 the Beneficiary resided at Selinsgrove State School and Hospital, and his father paid the full per diem costs of his support. In 1967, the Beneficiary was transferred to

FOURTH: I give, devise and bequeath to my Trustee, hereinafter named, all shares of stock that I may own or be entitled to receive in any publicly held companies, In Trust, nevertheless, for the following uses and purposes.

A. The Trustee shall hold, manage, invest and reinvest said trust estate and shall distribute the net income (hereinafter called 'Income') and principal from time to time as follows:

(1) During the lifetime of my son, WILLIAM GEORGE LeVISEUR, if he survives me, the Trustee shall pay the Income periodically to or for the support, maintenance, welfare and benefit of my said son or may, in the Trustee's discretion, add part or all of the Income to principal, to be invested as such.

(2) The Trustee may distribute such part of the Income not necessary for the support of my son, in equal shares to my three children, MARGARET MARY SMITH, EDWARD JOHN LeVISEUR, JR. and ELIZABETH ELLEN LANG, or to the survivor or survivors of them, provided however, should any of my said children predecease me, or surviving me die prior to the termination of the Trust Estate leaving issue, such deceased child's then living issue shall take the deceased parent's share, per stirpes.

(3) The Trustee shall use so much of the principal as may in her opinion be advisable therefor, for the support, maintenance, welfare, comfort and support of my son, WILLIAM GEORGE LeVISEUR. The Trustee shall have

---

Cresson State School and Hospital, and his father entered into an agreement under which he had to pay $200.00 per month for the support of the Beneficiary.

complete discretion as to how much shall be used for such purposes and may pay the sums to any person or institution having the care of my said son, without liability on the part of the Trustee to see to the application thereof, or directly to or for the benefit of my said son. In the event of the death of my said son, the Trustee is authorized, in her discretion, to pay any part or all of the funeral and burial expenses of my said son.

(4) At the death of my said son, WILLIAM GEORGE LeVISEUR, the trust shall terminate and the balance of the Trust Estate shall be distributed in equal shares, free and discharged of the Trust, to MARGARET MARY SMITH, EDWARD JOHN LeVISEUR, JR. and ELIZABETH ELLEN LANG, or to the survivor or survivors of them, provided however, should any of my said children not so surviving, leave issue, such deceased child's then living issue shall take the deceased parent's share, per stirpes.

From 1968 to 1974 the Trustee distributed income from the trust to pay the monthly support expenses of the Beneficiary. In 1974 the legislature amended Section 502 of the Mental Health and Mental Retardation Act of 1966 (Act)[2] to eliminate the legal duty of persons previously liable to support patients or residents receiving services under the Act when the patient or resident attained the age of eighteen (18). Because of this amendment, the Trustee was advised by the General Counsel of DPW that the trust was no longer required to support the Beneficiary, and therefore could not be billed for the Beneficiary's maintenance.

---

[2] Act of October 20, 1966, P.L. 96, *as amended,* 50 P.S. §4502.

In January of 1984, following this Court's decision in *Stoudt v. Department of Public Welfare*, 76 Pa. Commonwealth Ct. 576, 464 A.2d 665 (1983), DPW informed Western Center that it had revised its opinion and concluded that the Beneficiary was not eligible for Medical Assistance benefits. In *Stoudt*, we held that a beneficiary of a trust with the right to invade principal was not eligible for medical assistance, because the trustee could be compelled to administer the trust solely for the beneficiary, thereby avoiding the need for the beneficiary to resort to public welfare. Western Center was instructed to bill the Trustee for the Beneficiary's per diem costs until the income of the trust was exhausted and the corpus of the trust was reduced to $1,500.00.[3]

The Trustee was sent a Notice of Assessment on March 9, 1984, stating that the Trustee was liable for services at a rate of $131.00 per day less any social security benefits. Following this, the Trustee appealed to DPW, which, following a fair hearing, held that the trust assets were available resources[4] of the Beneficiary which must be exhausted to $1,500.00 before the Beneficiary may be eligible to receive Medical Assistance. This appeal followed.

The sole issue presented for our consideration is whether DPW properly concluded that the intent of the Testator, as evidenced by the language of the trust instrument, was to provide support primarily for the Beneficiary, to the exclusion of the other three named beneficiaries. If so, the trust is an available resource of the Beneficiary, making him ineligible for Medical Assistance.

---

[3] The value of the assets placed in the trust at the time of the Testator's death was $118,360.63.

[4] *See* 55 Pa. Code §§177.82, 177.83.

The Trustee argues that the Testator could not have intended to exhaust the trust and leave nothing for the other beneficiaries. She asserts that, had the Testator known the exorbitant per diem costs of medical care he would have wanted Medical Assistance to pay for them and not the trust. We cannot accept this assertion. The intent of the testator is to be determined from all the language within the four corners of the trust instrument, the scheme of distribution and the circumstances surrounding the execution of the instrument. *Farmers Trust Co. v. Bashore,* 498 Pa. 146, 150, 445 A.2d 492, 494 (1982). The trustee would have us ignore the express language of the trust instrument and attribute a "reasonable intent" to the Testator under the circumstances as they exist today. We will not do this. Only if a testator's intent cannot be ascertained with reasonable certainty will a court apply canons of construction to attribute a reasonable intention to the testator in the circumstances. *Id.* We believe in the instant case the intent of the Testator is ascertainable from the language in the trust instrument.

Our examination of the language in the trust instrument leads us to conclude that the Testator intended the incompetent Beneficiary to be the primary beneficiary of the trust. The Trustee was given broad discretion to distribute income for the support, maintenance, welfare and benefit of the Beneficiary, and add any income not necessary for the support of the Beneficiary to the principal or distribute it to the other three beneficiaries. Additionally, the Trustee was empowered to use so much of the principal as necessary for the support of the Beneficiary, and "may pay the sums to any person or institution having the care of [the Beneficiary]." Upon the death of the incompetent Beneficiary, the trust is to be terminated and its assets distributed among the remaining three beneficiaries. This language is clear in its intent to provide for the Testator's incompetent son.

124

We conclude that, in light of the language of the trust, and because the Testator was, until the time of his death, paying for the support of the Beneficiary, the trust was intended to pay for such support even to the exclusion of the other beneficiaries. We cannot presume, given the clear language of the trust, that the Testator did not intend that the entire corpus of the trust be available for the support of the Beneficiary.

Thus, having determined that DPW correctly found that the trust was intended to benefit the incompetent Beneficiary primarily, the holding in the *Stoudt* case controls the result in this case. The trust income and principal are available resources of the Beneficiary, which make him ineligible for Medical Assistance payments.

Because we find no error of law or violation of constitutional rights and because substantial evidence supports DPW's decision, we affirm.

ORDER

AND NOW, March 21, 1986, the decision of the Department of Public Welfare in the above-captioned matter, dated December 26, 1984, is affirmed.