J-A14003-16

2016 PA Super 206

| | |
|---|---|
| IN RE: ESTATE OF LILLIAN E. LOUCKS, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF OTTERBEIN UNITED METHODIST CHURCH | |
| | No. 1947 MDA 2015 |

Appeal from the Order Entered October 6, 2015
In the Court of Common Pleas of York County
Orphans' Court at No(s): 6791-1540

BEFORE:  BOWES, OTT AND PLATT,* JJ.

OPINION BY BOWES, J.:                    **FILED SEPTEMBER 09, 2016**

Otterbein United Methodist Church appeals from the October 6, 2015 orphans' court order that denied it the right to invade the principal of a trust of which it is a beneficiary.  We affirm.

The pertinent facts follow.  Lillian E. Loucks died testate on November 9, 1991.  After her November 10, 1987 last will and testament was admitted to probate, letters testamentary were issued to her executor, York Bank and Trust Company ("York").  Ms. Loucks devised her residuary estate to an *inter vivos* trust, which was executed on August 13, 1984.  The trust named York as trustee, and M & T Bank is successor trustee to York.

* Retired Senior Judge assigned to the Superior Court.

The dispositive terms of the August 13, 1984 trust were as follows. Ms. Loucks retained a life estate in the trust assets and was entitled to both all of its income and such principal as the trustee deemed necessary for her use and benefit. Trust Agreement, 8/13/84, at Article II. Article III governed disposition of a portion of the trust assets upon Ms. Loucks' death and provided that, if the assets in her estate were insufficient to satisfy certain specific bequests, then those bequests were to be satisfied from the trust. Additionally, Article III provided for the distribution of either fifteen percent of the trust's then existing income and principal or $5,000, whichever was less, to two individuals when Ms. Loucks died. Finally, pursuant to Article IV, any balance remaining in the trust after the specific bequests were paid, as outlined in Article III, was to be held in a charitable trust. Article IV provided that the charitable trust's income be distributed equally between Appellant and an entity that became SpiriTrust Lutheran. The two beneficiaries were permitted to use the income for any purpose.

After Ms. Loucks died, the charitable trust was funded with $700,000 in principal. Since 1991, Appellant and SpiriTrust Lutheran have received equal amounts of the income generated by the *corpus*. On February 13, 2015, Appellant filed a petition asking for an increase in the amount that it was receiving from the Lillian E. Loucks trust. In other words, it sought distributions from principal. The trustee, SpiriTrust Lutheran, and the Commonwealth of Pennsylvania, as *parens patriae* of charitable trusts, were

served with notice of the petition. The Commonwealth has opposed the grant of the relief requested by Appellant. The orphans' court held a hearing, and it thereafter denied Appellant's request to invade principal. This appeal followed. Appellant frames the issue for our review as follows:

> A. Did the Orphans' Court make an error of law or abuse its discretion when it found the Settlor did not intend to specifically benefit Otterbein United Methodist Church, one of the specifically identified beneficiaries named in the Lillian E. Loucks Trust Agreement and that, rather, the settlor's intent was to allow Otterbein United Methodist Church to fail for lack of funds and to place the remaining Trust funds with another, yet to be identified, religious organization?

Appellant's brief at 4.

Herein, despite how Appellant presents the pertinent inquiry, we are determining whether the terms of Ms. Loucks' trust permit an invasion by Appellant of its portion of the principal. "[T]he interpretation of a trust or a will presents a question of law. As such, our standard of review is *de novo,* and our scope of review is plenary." **In re Estate of McFadden**, 100 A.3d 645, 650 (Pa.Super. 2014) (*en banc*) (citations omitted).

Certain principles guide trust interpretation. The testator's intent is the cornerstone of such an endeavor. As we articulated in **Estate of Pew**, 655 A.2d 521, 533 (Pa. Super. 1994), it is "hornbook law that the pole star in every trust . . . is the settlor's . . . intent and that intent must prevail." **See also Estate of McFadden**, **supra.** We are not permitted to construe a provision in a trust so as "to destroy or effectually nullify what has always

- 3 -

been considered the inherent basic fundamental right of every owner of property to dispose of his own property as he desires, so long as it is not unlawful." **Estate of Pew**, **supra** at 533. Critically, the settlor's intent must be ascertained from the language of the trust, and we give effect, to the extent possible, to all words and clauses in the trust document. **See In re Estate of McFadden**, **supra**; **accord Farmers Trust Co. v. Bashore**, 445 A.2d 492, 494 (Pa. 1982) ("A settlor's intent is to be determined from all the language within the four corners of the trust instrument, the scheme of distribution and the circumstances surrounding the execution of the instrument.").

Only when the language of the trust is ambiguous or conflicting or when the settlor's intent cannot be garnered from the trust language do the tenets of trust construction become applicable. **Farmer's Trust**, **supra** at 494 ("Only if a settlor's intent cannot be ascertained with reasonable certainty will a court apply canons of construction, to attribute a reasonable intention to the settlor in the circumstances."); **see also In re Estate of McFadden**, **supra**. In this case, we conclude that the language is clear and articulates Ms. Loucks' intent; hence, we do not resort to other canons of trust construction.

The pertinent provision of the trust is in Article IV and states:

IV. Distribution of the Balance of the Trust Upon Settlor's Death.

The balance remaining in said trust shall be held and retained by the Trustee **perpetually**, for the following uses and purposes:

(A) To pay and distribute **one-half of the income** therefrom to Otterbein United Methodist Church, of York, Pennsylvania, to be used by said church for reducing any indebtedness, or for general purposes.

(B) To pay and distribute **one-half of the income** therefrom to Lutheran Social Services, South Region, for the York Lutheran Home, located at 750 Kelly Drive, York, Pennsylvania, for the purpose of reducing indebtedness, or for general purposes.

(C) **In the event that the balance in the Trust at the time of Settlor's death is less than Fifty Thousand Dollars ($50,000.00), then I direct the Trustee to pay said balance to Otterbein United Methodist Church, of York, Pennsylvania, and Lutheran Social Services, South Region, for the York Lutheran Home, in equal shares.**

Trust Agreement at pp. 3-4 (emphases added).

The plain language of Article IV does not permit discretionary distributions from the *corpus* of the trust when needed or requested by either Appellant or the other beneficiary in order to sustain their financial viability. To the contrary, the language indicates unequivocally that the trust is to be held perpetually and only the income is to be distributed to the respective beneficiaries. Invasions of principal would deplete the trust so that it would not be perpetual, in violation of the settlor's clearly-articulated intent. Additionally, the settlor set forth the triggering event for principal distribution: if the balance in the trust was less than $50,000 when Ms.

Loucks died. There is no construction that can be placed upon the dispositive terms of this trust that would permit Appellant to invade principal.

Thus, Appellant, even though it now denies this claim, is seeking to modify the terms of this perpetual charitable trust, which implicates our decision in *In re Barnes Foundation*, 683 A.2d 894 (Pa.Super. 1996). Therein, we adopted Restatement (Second) of Trusts § 381 to analyze when the court can permit deviation from the terms of a charitable trust:

> The court will direct or permit the trustee of a charitable trust to deviate from a term of the trust if it appears to the court that compliance is impossible or illegal, or that owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust.

Restatement (Second) of Trusts § 381.

In the present case, compliance with the terms of the trust is neither impossible nor illegal. The trust's purpose was to supply income to the two named beneficiaries in perpetuity, and it permits no distributions of principal. It cannot be said that Ms. Loucks could not possibly have anticipated that one of the two institutions might become in need of funds in excess of income generated from the *corpus*; she did not allow invasion of principal in that event. Rather, the trust was allowed to terminate only if the assets in it were $50,000 or less upon her death. Appellant's present position, wherein it asks for permission to obtain principal when its financial needs require it,

would eventually result in the termination of its portion of the trust, which is not permitted under the language in question.

Appellant suggests that Ms. Loucks authorized the distribution of principal under Article VII, which provides:

> In the administration of the Trust Estate and any Trust provided for hereunder, the Trustee shall have . . . the following powers without restriction, either after the delivery of the notice referred to in Subsection (D) of Section VI hereof, or. . . after the death of the Settlor.
>
>> (J) To divide and distribute any Trust in kind or in money, or partly in each, or by wa[y] of undivided interest and for such purposes to value any property to be thus divided or distributed at fair market values at the date or dates of distribution.

We refuse to construe this provision so as to allow invasions of principal under Article IV. To do so would be to abrogate the clear language of Article IV providing for a perpetual trust with payments only of income to its two beneficiaries. Article VII does nothing more than permit the trust to be divided and distributions to be made in kind. It does not mention invasions of principal, even though other provisions in the trust are clear in that respect.

Ms. Loucks' trust was created to provide: 1) income to her during her lifetime (Article II); 2) money to named individuals at her death (Article III); and 3) after compliance with Article III, the balance remaining to be placed in a perpetual charitable trust with the income payable, in equal shares, to Appellant and SpiriTrust (Article IV). To further these ends, the instrument

accords the trustee the power to manage the funds within the trust, and under Article VII, "[t]o divide and distribute any Trust in kind or in money, or partly in each, or by way of undivided interests, and for such purposes to value any property to be thus divided or distributed at fair market values . . . ." Art. VII(J)).

Under the above-articulated precepts of trust construction, the trustee's authority to distribute trust assets in Article VII must be read in conjunction with Articles II through IV. In Articles II and III, Ms. Loucks demonstrated her ability to set forth when principal could be invaded. In Article II, she authorized the trustee "in its absolute discretion" to distribute payments from the principal to her during her lifetime as "deem[ed] necessary or advisable for her use and benefit." In Article III, the settlor empowered the trustee to distribute payments from the principal to specific individuals upon her death. Finally, as noted, in Article IV, the settlor allowed the trustee to pay the trust *corpus* to Appellant and SpiriTrust if the trust contained less than $50,000 when she died. Article IV permits no principal invasions. Article VII is an administrative rather than dispositive provision, and does not allow *corpus* distributions under Article IV.

Appellant also maintains that **In re Longbotham's Estate**, 29 A.2d 481 (Pa. 1943), is "similar to this case." Appellant's brief at 20. Therein, the question presented was whether principal could be expended to make major repairs to other real property that also constituted principal. Our High

Court applied the precept that payment for permanent improvements, such as those at issue in the case, should come from principal rather than income. The Court applied the legal principle that "[i]f the improvements are permanent in character, the principal is benefited, the effect being merely to substitute one form of principal for another.'" **Id.** at 482 (quoting Restatement of Trusts, § 233, comment (k)). Appellant is not asking for an asset constituting principal to be repaired from principal. Thus, **Longbotham's Estate** analyzes an issue that is not implicated herein.

Appellant also posits that the rationale of **In re Jacobson's Estate**, 331 A.2d 447 (Pa. 1975), applies. Therein, the trustee was expressly allowed, within it discretion, to use principal, and we upheld such a distribution in the face of objection by the remaindermen of the trust. The trust in this case does not authorize principal distributions to Appellant under Article IV, and Appellant's reliance upon that decision is misplaced.

We also note the following. In seeking such distributions of principal needed to sustain itself, Appellant relies heavily upon the fact that it is presently unable to generate sufficient money to meet its operating costs, which include attending to the needs of a significant number of indigent people. It suggests that we must determine that the settlor did not intend for it to fail for lack of funds, and that the orphans' court abused its discretion in concluding that it could not obtain distributions from its one-half of the principal of the trust to the extent needed to render it financially

viable. Appellant insists that, without payments from the trust *corpus*, it will become insolvent and thus, application of the *cy pres* doctrine will become necessary even though the settlor intended for it to be the recipient of one-half of the trust assets.

While we laud Appellant's efforts to aid the poor, our task herein is to interpret the terms of the trust and ascertain whether it permits Appellant to receive principal distributions. Appellant is responsible for its own financial operations, and the state of its budgetary affairs is not a factor in interpreting the terms of this trust.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2016