J-A25003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: VIRGINIA A. FINKEN REVOCABLE TRUST | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: MELISSA FINKEN | : : : : : : | |
| | : | No. 1507 EDA 2018 |

Appeal from the Order April 11, 2018
In the Court of Common Pleas of Northampton County Orphans' Court at
No(s): 2005-0327

BEFORE: PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED DECEMBER 24, 2018**

Appellant, Melissa Finken, appeals from the April 11, 2018 Order, which, *inter alia*, denied her Motion for Distribution of trust assets. After careful review, we affirm.

The facts and procedural history, as gleaned from the record, are as follows. On February 26, 1999, Virginia A. Finken ("Settlor" or "Decedent"), established a revocable living trust (the "Trust"). As Settlor of the Trust, she appointed herself trustee, and appointed her six children—Appellant, Mildred M. Beahn, Jeanne Finken, LeRoy A. Finken, Jane Mellert, and Erwin C. Finken, III—as successor trustees (the "Co-Trustees"). Trust, 2/26/99, at Art. V, § C. Decedent died on October 10, 2004. At the time of her death, the approximately 125-acre Finken Family Farm ("the Farm") was the primary

asset of the Trust.[1]  Pursuant to Article I, Section H of the Trust document, upon Decedent's death, the Trust became irrevocable and "shall be subject to amendment or change."  *See* Art. I, § H.

Relevant to the instant appeal, the Trust provides that upon Settlor's death, in addition to becoming Co-Trustees, each of her children shall receive a one-sixth share of the Trust estate as beneficiaries.  Trust at Art. IV, § A.  *See also* Art. VI, § A(1).  The Trust authorizes the Co-Trustees to exercise their powers, including the powers to distribute the Trust assets and terminate the Trust, if a majority of the Co-Trustees vote to take such actions.  Trust at Art. VI, § C(8).[2]

In 2006, the Co-Trustees entered into an agreement with the County of Northampton as part of the County's Farmland Preservation Program.[3]  On

---

[1] The Farm property includes "farmed" land and two houses surrounded by approximately two acres of land.  Appellant lives in one house; her sister Jean lives in the other.

[2] The Trust also provides that the distribution of the Trust assets is subject to limitations that: (1) permit Leroy A. Finken to continue to farm the property until he turns 65 years old; and (2) grant life estates in the houses occupied on the Farm to Appellant and her sister.  Trust at Art. IV, §§ B, C.  Leroy A. Finken is currently older than 65 years old and Appellant and Jean L. Finken continue to occupy their respective homes on the Farm.

[3] Pursuant to the Farmland Preservation Program, in exchange for cash and a reduced tax assessment, the owner of farmland grants an easement restricting the use of the land, in whole or in part, to farming and equine operations.  The easement runs with the land, thereby binding the original and future owners.  Appellant's Brief at 6 n.3.  *See also* www.northamptoncounty.org/CTYADMN/FARMPRES.

October 11, 2006, the Northampton County Court of Common Pleas entered an Order approving the decision of a majority of the Co-Trustees to sell an approximately 53-acre conservation easement[4] to the County of Northampton.[5, 6] The County of Northampton purchased the easement from the Trust for $720,457.80. The Co-Trustees made partial distributions to themselves, as beneficiaries of the Trust, and used some of the funds to pay the Farm's expenses and maintain the houses on the Farm.[7]

On October 6, 2015, Appellant filed a Petition to Compel Accounting and Distribution and to Terminate Trust.[8] Relevant to the instant appeal, Appellant asserted that the plain meaning of the Trust language permitted the immediate distribution of the Trust assets to all six Co-Trustees, as Trust

---

[4] The parties and the trial court also refer to this conservation easement as the sale of "development rights."

[5] Co-Trustees Appellant and Erwin C. Finken, III did not consent to the sale; however, neither appealed from the court's Order.

[6] The approximately 2 acres upon which Appellant's and her sister's homes sit were excluded from the easement.

[7] **See** Trust at Art. VI, § A(4) (pertaining to distributable income); Art. VI, § B(9) (pertaining to division of assets for distribution). Approximately $250,000 of the County's payment remains in the Trust. **See** Trust at Art. VI, § B(1) (providing for retention of assets).

[8] It is unclear from the record whether Appellant ever requested that the Co-Trustees vote on her demand for distribution of Trust assets and termination of the Trust. We assume that if Appellant had made such a request a majority of the Co-Trustees would have voted not to take such action.

beneficiaries.[9]  *See* Petition, 10/6/15, at ¶ 9.  Appellant further alleged that the "majority" of the Co-Trustees had failed to account for the assets in the Trust.  *Id.* at 7.  She, therefore, sought an accounting of the Trust, as well as a distribution of its assets, and termination of the Trust.  *Id.* at 9.

On November 18, 2015, the Co-Trustees filed an Answer to the Petition. Following a September 11, 2017 non-jury trial, the orphans' court denied Appellant's Petition on January 24, 2018.  *See* Order, 1/24/18.

On January 30, 2018, Appellant filed a Post-Trial Motion.  On February 2, 2018, the orphans' court entered an Order scheduling argument on Appellant's Motion.  Both Appellant and Appellees filed Briefs in support of their respective positions.[10]

_____

[9] Appellant sought distribution of the assets with a carve-out for the sisters' life estates and Leroy's right to farm.  *See* Petition, 10/6/15, at ¶ 9.  Appellant noted that Leroy's right to farm had expired and terminated upon his attaining age 65.  *Id.* at 6.  Appellant did not, however, acknowledge that the life estates in the residences continue to exist.

[10] Pennsylvania Orphans' Court Rule 8.1 prohibits a party from filing a post-trial motion to any order or decree of court.  Pa.O.C.R. 8.1.  Moreover, if a party files a motion for reconsideration of an orphan's court order, the court must expressly grant the motion within 30 days of the order from which the party seeks reconsideration, or it will be deemed denied.  Pa.O.C.R. 8.2. Here, Appellant erroneously filed a Post-Trial Motion pursuant to Pa.R.C.P. No. 227.1, when she should have filed a Motion for Reconsideration.  However, this Court's review indicates that the orphans' court overlooked this error and treated her Post-Trial Motion as a Motion for Reconsideration.  Moreover, by scheduling a hearing on Appellant's Motion and permitting briefing, we conclude that the orphans' court indicated its intention to reconsider its January 24, 2018 Order.

On March 20, 2018, the orphans' court held a hearing on Appellant's Motion. On April 11, 2018, the orphans' court granted in part and denied in part Appellant's Post-Trial Motion. In particular, the court granted Appellant's request for an Accounting,[11] but continued to deny her request for an immediate distribution of all assets of the Trust. In so doing, the court ignored the provisions of the Trust that permit the distribution of the assets and termination of the trust only upon a majority vote of the Co-Trustees.

Rather, the court interpreted the language of the Trust and found that it plainly required distribution of the Trust assets. Orphans' Court Order, 4/11/18, at 3. It concluded, however, that Decedent's intent in establishing the Trust was to preserve the Farm and that preventing distribution of the assets prior to the expiration of the life estates of Jeanne L. Finken and Appellant furthered that intent. *Id.* at 4. Thus, the court purported to modify the Trust to prevent distribution of the Trust assets. *Id.* This timely appeal followed.

Appellant raises the following issue on appeal:

Does the unambiguous language of [Decedent's Trust] require the Controlling Trustees to account for and distribute to the beneficiaries all of the remaining assets in the Trust now?

Appellant's Brief at 3.

_____

[11] The court specifically granted Appellant's "motion for accounting subject to sanctions for delay and mismanagement and to adjustments for prior unequal payments[.]" Orphans' Court Order at 5. *See* Trust at Art. VI, § C (pertaining to accounting).

We grant great deference to the findings of the orphans' court.

When reviewing a decree entered by the [o]rphans' [c]ourt, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [o]rphans' [c]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions.

*In re Estate of Harrison*, 745 A.2d 676, 678 (Pa. Super. 2000) (internal citations and quotation marks omitted). "[T]he [o]rphans' court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Luongo*, 823 A.2d 942, 951 (Pa. Super. 2003).

Appellant challenges the orphans' court's interpretation of the Trust. "[T]he interpretation of a trust or a will presents a question of law. As such, our standard of review is *de novo*, and our scope of review is plenary." *In re Estate of McFadden*, 100 A.3d 645, 650 (Pa. Super. 2014) (*en banc*) (citation omitted). "Our analysis therefore is not confined by the decision of the orphans' court." *Id.* (citation omitted).

Certain principles guide trust interpretation. The testator's intent is the cornerstone of such an endeavor. As we articulated in *Estate of Pew*, 440 Pa. Super. 195, 655 A.2d 521, 533 (1994), it is "hornbook law that the pole star in every trust . . . is the settlor's . . . intent and that intent must prevail." *See also Estate of McFadden*, *supra*. We are not permitted to construe a provision in a trust so as "to destroy or effectually nullify what has always been considered the inherent basic fundamental right of every owner of property to dispose of his own property as he desires, so long as it is not unlawful." *Estate of Pew*, *supra* at 533. Critically, the settlor's intent must be ascertained from the

language of the trust, and we give effect, to the extent possible, to all words and clauses in the trust document. ***See In re Estate of McFadden***, ***supra***; ***accord Farmers Trust Co. v. Bashore***, 498 Pa. 146, 445 A.2d 492, 494 (1982) ("A settlor's intent is to be determined from all the language within the four corners of the trust instrument, the scheme of distribution and the circumstances surrounding the execution of the instrument."). Only when the language of the trust is ambiguous or conflicting or when the settlor's intent cannot be garnered from the trust language do the tenets of trust construction become applicable. ***Farmers Trust***, ***supra*** at 494 ("Only if a settlor's intent cannot be ascertained with reasonable certainty will a court apply canons of construction, to attribute a reasonable intention to the settlor in the circumstances.")[.]

***In re Estate of Loucks***, 148 A.3d 780, 782 (Pa. Super. 2016); ***see also***

***McFadden***, 100 A.3d at 649-50 (in interpreting a trust, court may rely upon extrinsic evidence of a settlor's intent only if the trust is ambiguous and only to the extent that the extrinsic evidence informs the ambiguous language in question; such evidence may not be considered in some relatively unbounded effort to glean a settlor's broader intent).

Appellant argues that, pursuant to Article IV, Section A and Article VI, Section A(1), the Trust unambiguously indicates Decedent's intent that the Co-Trustees distribute the Trust assets upon Decedent's death. She asserts that the encumbering provisions in the Trust do not prohibit enforcement of the Trust's distribution provision. Appellant's Brief at 8-9, 11-12. She contends that the orphans' court erred when it "deviat[ed] from [] Decedent's unambiguous language" by requiring that the assets remain in Trust and that this directive does not further Decedent's intent. ***Id.*** at 12. In fact, Appellant

claims, the court's Order violates Decedent's objective that the Trust assets be distributed upon her death. *Id.*[12]

Here, the orphans' court concluded that the plain language of the Trust required distribution of its assets in accordance with Appellant's request. However, rather than grant Appellant relief, the court proceeded to consider the Decedent's intent in establishing the Trust—which it determined was the preservation of the Farm for the benefit of her children. The court, therefore, concluded that, to give effect to Decedent's intent, it must modify the trust to prevent the distribution of its assets until the termination of the life estates.

While we agree with both Appellant and the orphans' court that that language of the Trust is unambiguous, we disagree with their interpretations of it. The Trust language unambiguously indicates Decedent's clear intent to vest the Co-Trustees with the authority to, by a majority vote, control the distribution of Trust assets. **See** Trust at Art. VI, § C(8) (stating that the powers of the Co-Trustees "shall be exercisable by a majority vote[.]"). By its terms, the Trust conferred upon the Co-Trustees the authority and discretion to, *inter alia*, distribute the assets and to terminate the Trust. **See** Trust at Art. VI, § A(4) (pertaining to distributable income); Art. VI, § B(9)

---

[12] Appellant also contends that, contrary to Article I, Section H of the Trust and the court's findings, the Trust is revocable and, thus, not subject to the modification provision set forth in 20 Pa.C.S. § 7740.2(a), which the orphans' court invoked as a basis for its disposition. For the reasons discussed *infra*, the trial court's ultimate disposition was correct, but not as the result of a modification. Accordingly, Section 7740.2(a) is inapplicable. **See Connor v. Crozer Keystone Health System**, 832 A.2d 1112, 1117 n.5 (explaining that the Superior Court may affirm a trial court's decision on any grounds).

(pertaining to division of assets for distribution); Art. VI, § A(3) (pertaining to discretionary termination of the Trust). Accordingly, pursuant to the Trust's unambiguous language, the distribution and termination sought by Appellant may occur only with the approval of a majority of the Co-Trustees. Since a majority of the Co-Trustees did not approve the distribution of the Trust assets or the termination of the Trust, the Trust document does not permit such distribution or termination at this time.

The Trust does not, as Appellant claims, contain a provision requiring distribution of the Trust assets upon the death of Settlor. Rather, the provisions upon which Appellant relies—Article IV, Section A and Article VI, Section A(1)—establish only the manner of apportionment in which the assets are to be distributed to the beneficiaries when distributions occur, *i.e.*, a one-sixth share to each of Settlor's children. In fact, by its plain language, the only provision in the Trust that mandates distribution by a date certain is Article 8, Section C(5). Section C(5) provides that, in accordance with the Rule Against Perpetuities, if the Co-Trustees have not already terminated the Trust, the Trust must be terminated "[21] years after the death of the last surviving descendent of the Settlor who is living on the date appearing at the beginning of this declaration." ***See*** Art. 8, § C(5).

In sum, our *de novo* review of the plain language of the Trust indicates that it was the Decedent's primary intent that the distribution of the Trust's assets and the termination of the Trust should only be by a majority vote of

the Co-Trustees. It is also clear that Decedent intended that any distributions be apportioned evenly between the six beneficiaries.

Giving effect to all words and clauses in the Trust document, we conclude that, absent a request for modification of the Trust and circumstances compelling modification, only a majority vote of the Co-Trustees could grant Appellant the relief she sought in her Petition.[13]

Appellant also claims that the orphans' court erred when it granted her request for an accounting but "did not address the issues of the [Co-]Trustees' delay and the need to adjust distributions for unequal payments made over the last dozen years," or surcharge the Trust to reimburse her for her legal fees. Appellant's Brief at 14. We disagree.

In its Opinion, the orphans' court explained that it found that Appellant had "failed to present evidence in support of her allegations that the [majority of the [Co-Trustees] has made certain decisions or taken certain actions with the intention of benefitting specific beneficiaries." Opinion, 4/21/18, at 5. The court further found that Appellant "failed to provide sufficient support for her claim that certain beneficiaries have received unequal payments and that an annuity has been created for purposes of benefitting two of the beneficiaries." *Id.* Nonetheless, the orphans' court concluded that, as a Trust beneficiary,

---

[13] It bears reiterating that Appellant did not seek modification of the Trust, and that the orphans' court unnecessarily modified the Trust after erroneously concluding that the plain language of the Trust required the immediate distribution of its assets.

Appellant is entitled to an accounting and, thus, granted Appellant's motion "for accounting subject to sanctions for delay and mismanagement and to adjustments for prior unequal payments." *Id.* at 1.[14]

Our review of the record supports the orphans' court's factual findings, and we conclude that the court did not abuse its discretion in granting Appellant's motion for an accounting. Moreover, given that the orphans' court properly granted Appellant's request for an accounting, we fail to see how this portion of the court's order aggrieves Appellant. *See* Pa.R.A.P. 501; *In re J.G.*, 984 A.2d 541, 546 (Pa. Super. 2009) (*en banc*) (interpreting Pa.R.A.P. 501 and observing that "[a]lthough a prevailing party may disagree with the trial court's legal reasoning or findings of fact, the prevailing party's interest is not adversely affected by the trial court's ultimate order because the prevailing party was meritorious in the proceedings below." (citation omitted)).

Accordingly, Appellant's issue merits no relief.

Order affirmed.

---

[14] Notably, the court did not set a deadline by which the accounting must take place.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/18