# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce X. Cooper, :
              Appellant :
   :
       v. : No. 691 C.D. 2016
   : Argued: September 13, 2016
Department of Corrections, :
Randall Britton, Dorina Varner, :
Joel Keller, and Brian Corbin :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE P. KEVIN BROBSON, Judge (P)
              HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT            FILED: October 26, 2016

      Bruce X. Cooper, an inmate, appeals an order of the Huntingdon County Court of Common Pleas (trial court) dismissing his civil rights action against the Department of Corrections (the Department) and two employees, Joel Keller, and Brian Corbin.[1]  After hearing evidence, the trial court held that Cooper's failure to exhaust his administrative remedies barred his claim under the Americans with Disabilities Act.[2]  Although it found that Cooper proved a violation of the Religious Land Use and Institutionalized Persons Act,[3] the trial court dismissed this count as moot because Cooper was no longer at the state correctional facility where the violation occurred.  The trial court dismissed the

---

[1] Other Department employees, Randall Britton and Dorina Varner, were named as defendants in the original complaint and the first amended complaint. They were deleted from the second amended complaint.

[2] 42 U.S.C. §§12101-12213.

[3] 42 U.S.C. §§2000cc – 2000cc-5.

claims against the individually named defendants for lack of evidence. Cooper asserts that the trial court erred because he did avail himself of the prison grievance procedures; his civil rights action is not moot because he is serving a life sentence and could, at any time, be returned to the state prison found to violate federal law; and the individual defendants were personally responsible for the deprivation of his federal rights. As a threshold matter, Cooper asserts that the Superior Court has jurisdiction over his appeal. After review, we are constrained to affirm because Cooper's failure to file post-trial motions waives all issues before this Court.

### Background

Cooper is serving a life sentence for second degree murder. On December 6, 2010, Cooper, *pro se,* filed a Section 1983[4] complaint against the Department and several of its employees and officials for violating his rights under the Americans with Disabilities Act (ADA) and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).

After the Department filed preliminary objections, Cooper filed an amended complaint raising the same claims. The Department again filed

---

[4] Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

42 U.S.C. §1983. To hold a state actor liable under Section 1983 "a plaintiff must prove a deprivation of a right guaranteed by the Constitution or the laws of the United States by a defendant acting under color of law. *Pettit v. Namie*, 931 A.2d 790, 801 (Pa. Cmwlth. 2007). "A Section 1983 action may be brought in state court." *Jae v. Good*, 946 A.2d 802, 809 (Pa. Cmwlth. 2008). "Section 1983 does not create substantive rights but, rather, is the vehicle for vindicating rights conferred in the United States Constitution or in federal statutes." *Id*.

2

preliminary objections, but they were overruled by the trial court on August 1, 2011. In 2013, Cooper obtained legal representation, and on February 5, 2015, a three-day bench trial on his amended complaint began. The trial established the following facts.

The Nation of Islam was founded in the 1930s in Detroit, Michigan by Wallace Fard.[5] It rejected Christianity as a false religion and taught that the enslavement of African-Americans in this country had separated them from their Muslim faith. Fard was succeeded by Elijah Muhammad as the leader of the Nation of Islam. After Elijah Muhammad's death in 1975, his son, Warith D. Muhammad, encouraged integration with the sect known as Sunni Muslims, which make up 85% of the world's Muslims. Most did so, but a small group remained with the Nation of Islam under the leadership of Louis Farrakhan. Another group, which rejected the authority of both Warith D. Muhammad and Louis Farrakhan, formed a third sect, *i.e.*, Muhammad's Temple of Islam.

Temple of Islam members believe that Fard was Allah incarnated and Elijah Muhammad a prophet of Allah. Sunni Muslims reject this belief because they believe humans cannot be divine and that Abu al-Qasim Muhammad, who died in 632 A.D., was the last and greatest prophet of Allah. Temple of Islam members reject Sunni Islam because it departs from the teachings of Elijah Muhammad.

All Muslims fast during the month of Ramadan, which occurs during the ninth month of the Islamic lunar calendar for Sunni Muslims and for

---

[5] Belle Tuten, M.A., Ph.D, a history professor at Juniata College and Susan Elizabeth Brill, M.A., Ph.D, an assistant professor of religious studies at Juniata College provided testimony on Islam. Both were accepted as experts and submitted reports, which were accepted into evidence.

Farrakhan's followers. For adherents of the Temple of Islam, however, Ramadan always falls in the month of December. The Ramadan fast requires all Muslims to abstain from food and water from sunrise to sunset.

All Muslims abstain from consuming pork but there are different dietary laws for those who follow Temple of Islam. Elijah Muhammad prohibited the eating of dried beans (with the exception of small navy beans), a number of leafy green vegetables, potatoes, cornbread and white bread. Whole wheat bread is allowed, but may not be eaten when hot or fresh. As such, pancakes and hot muffins are prohibited. Nuts are also prohibited, along with certain types of fish and all meat not slaughtered in the kosher manner.

Elijah Muhammad wrote prolifically, and his speeches have been recorded. In their study groups, Temple of Islam members focus on his writings and speeches. The Quran is not the primary source for Temple of Islam members, as it is for followers of Nation of Islam. Temple of Islam members are very critical of Louis Farrakhan, the leader of the Nation of Islam.

Weekly prayer services, known as Jummah, take place on Friday for members of the Temple of Islam and all other Muslims. SCI-Huntingdon does not make services available to members of Temple of Islam, as it does for Nation of Islam. Cooper received permission to use the back of the chapel during Nation of Islam services to conduct his own Friday prayer service. However, he was not informed that the chapel lacked bathroom facilities or that the chapel would be locked during the two-hour service. Because of a bladder problem, he needs to urinate frequently. He asked the correction officer to allow him to leave for a bathroom break, but his request was denied. Accordingly, he urinated on himself, which prompted ridicule, bullying and an assault by other inmates.

4

Cooper submitted several religious accommodation requests to prison officials. His request to use the chapel alone was denied. He was advised to watch a service on television. Cooper has a television and cable, but a Temple of Islam service is not available on the prison's cable.

Likewise, Cooper's request for an accommodation to fast in December was refused for the stated reason that the prison had already accommodated a month-long fast to Muslim inmates. Food cannot be taken from the dining hall, and, thus, Cooper cannot store food in his cell to eat before or after the fast. Food available from the commissary is snack food that would not conform to the diet prescribed by Elijah Muhammad.

Robert Williams, an inmate, confirmed Cooper's account of SCI-Huntingdon's religious accommodations. Williams had been a plaintiff in a suit filed against the Department for refusing to allow December fasting at SCI-Graterford for members of Temple of Islam. The parties settled, and a copy of the settlement agreement (Cooper Exhibit 23) was admitted into evidence. Under the agreement, the Department agreed to give Temple of Islam members a morning meal before sunrise and an evening meal after sunset to accommodate December fasting at SCI-Graterford. Several years later Williams was transferred to SCI-Rockview, where officials also accommodated the December fast. Williams is currently incarcerated at SCI-Huntingdon, where the December fast is still not accommodated. By contrast, SCI-Huntingdon provides Muslim inmates who fast on the lunar calendar a special evening meal and a bagged breakfast to eat before sunrise. Williams' testimony was confirmed by several other inmates.[6]

---

[6] Three other inmates from SCI-Huntington testified that they wished to fast in December, submitted such requests to prison officials and their requests were denied.

5

Ulrich Klemm, who is employed by the Department as an administrator for religion and volunteer services, testified that the Department has adopted a policy to ensure that inmates may practice their religious faith. The policy includes instructions on how to request a religious accommodation and the form for doing so (Department Exhibit 1). Accommodation requests are reviewed by a Department committee, which Klemm chairs. He confirmed Cooper's testimony that Muslims, who fast during the lunar month of Ramadan, receive an accommodation. He also confirmed that Cooper's request for a December fast was denied because he was the only inmate at SCI-Huntingdon fasting in December. He agreed that other state correction facilities accommodate a December fast.

Joel B. Keller, a program manager at SCI-Huntingdon who retired in 2011, testified that he refused Cooper's requested accommodation for a Temple of Islam service, but he could not recall the reason for doing so. Brian Corbin, deputy superintendent at SCI-Huntingdon from 2009 to 2011, testified that Cooper requested a bathroom in the chapel. It was denied for lack of funding. For this reason, he advised Cooper to watch religious services on television. Notably, the chapel at SCI-Huntington now has a bathroom. Corbin recalled that Cooper requested accommodation for a December fast and believed that it was rejected because the prison had already accommodated a one-month fast by Muslim inmates.

Klemm explained that he works to find clergy for any religion identified by any inmate. He has contacted Buddhist monks, Wiccans, Jewish rabbis, Christian ministers and priests. He has procured Bibles, Qurans, and Native-American prayer feathers. Nation of Islam clergy serve at the prison, but no inmate, including Cooper, has ever requested a Temple of Islam imam for SCI-

Huntington. The Department does not allow inmate-led services because it puts an inmate in a position of leadership over others. This has led to problems in the past, including a stabbing at an inmate-led religious service.

Paula Price, the health care administrator at SCI-Huntingdon, testified that the prison accommodates physical disabilities. In 2009, the prison instituted a policy for accommodating disabilities. Department Exhibit 3. Inmates submit their accommodation requests to her. Cooper never submitted a request while at SCI-Huntingdon.

On February 13, 2015, at the conclusion of trial, Cooper's counsel requested leave to amend the complaint to conform to the evidence offered at trial and to cure technical defects. The trial court granted the motion, and a second amended complaint was filed, which dropped Britton and Varner as defendants.

### Trial Court Opinion

On November 2, 2015, the trial court denied Cooper's request for relief. The trial court found Cooper's religious beliefs as a member of the Temple of Islam to be sincerely held. Nor did the trial court question Cooper's claim that he suffered a bladder condition. The reasons for the trial court's decision were legal.

With respect to his ADA claim, the trial court found that Cooper did not use the existing prison grievance system to challenge the prison's failure to accommodate his physical disability. This foreclosed Cooper's right to proceed in court.

With respect to Cooper's claim for monetary damages from Corbin and Keller for violating his federally protected civil rights, the trial court concluded that Cooper's evidence was inadequate. A defendant's conduct must have a close,

7

causal connection to the perceived injury in order for liability to attach. Corbin and Kelly recommended denying Cooper's requested accommodations, but they did not have the final word on the request.

With respect to Cooper's claim under RLUIPA, the trial court held that Cooper demonstrated that the Department's refusal to accommodate his December fast substantially burdened his ability to exercise his religion. Further, the Department offered no evidence that it had a compelling interest to refuse to accommodate Cooper. Cooper's RLUIPA count did not seek monetary damages, but only declaratory and injunctive relief, which would have been granted had Cooper been housed at SCI-Huntingdon. However, Cooper is now at SCI-Dallas, making his RLUIPA claims about SCI-Huntingdon moot.

## Appeal

On November 2, 2015, the trial court issued its memorandum and order dismissing Cooper's complaint. On November 23, 2015, Cooper appealed to the Superior Court. On December 4, 2015, Cooper filed a *nunc pro tunc* motion for post-trial relief with the trial court, stating that "through inexperience, [his counsel] failed to perceive that the [trial court's] dismissal was, in actuality, a 'decision' under Pa. R.C.P. 227.1(c)(2)."[7] Nunc Pro Tunc Motion at 2, ¶4.

---

[7] It states:

> (c) *Post-trial motions shall be filed within ten days after*
>> (1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or
>> (2) notice of nonsuit or *the filing of the decision in the case of a trial without jury.*

Pa. R.C.P. No. 227.1(c) (emphasis added).

8

On January 5, 2016, the trial court denied Cooper's motion for *nunc pro tunc* relief. The trial court stated that it lacked jurisdiction to modify the order of November 2, 2015, once 30 days had expired. *See* 42 Pa. C.S. §5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.").[8]

On January 21, 2016, the Superior Court directed Cooper to show cause why his appeal should not be dismissed because he had not filed post-trial motions. *Cooper v. Department of Corrections* (Pa. Super., No. 2047 MDA 2015, filed January 21, 2016). On February 3, 2016, noting that final judgment had not been entered on the trial court docket as required by the Pennsylvania Rules of Appellate Procedure,[9] the Superior Court directed Cooper to praecipe the trial court

---

[8] On January 5, 2016, the trial court issued a separate memorandum, stating that no issues had been preserved for appellate review because Cooper had failed to file post-trial motions. Cooper filed a motion with the trial court to rescind the trial court's memorandum because he had filed a *nunc pro tunc* motion for post-trial relief.

[9] Rule 301 states, in relevant part, as follows:

(a) Entry upon docket below.

(1) Except as provided in paragraph (2) of this subdivision, no order of a court shall be appealable until it has been entered upon the appropriate docket in the lower court. Where under the applicable practice below an order is entered in two or more dockets, the order has been entered for the purposes of appeal when it has been entered in the first appropriate docket.

(2) In a criminal case in which no post-sentence motion has been filed, a judgment of sentence is appealable upon the imposition of sentence in open court.

Pa. R.A.P. 301(a).

prothonotary to enter judgment. Cooper complied, and the trial court prothonotary entered judgment pursuant to Cooper's praecipe on February 4, 2016.

On February 24, 2016, the Superior Court discharged the rule to show cause and referred the case to the merits panel. In the meantime, the Department requested a transfer of Cooper's appeal to this Court, and the transfer request was also referred to the merits panel for oral argument on April 18, 2016. However, on May 2, 2016, the Superior Court transferred the matter to this Court, which has jurisdiction over appeals involving trespass actions against Commonwealth defendants. *Cooper v. Department of Corrections* (Pa. Super., No. 2047 MDA 2015, filed May 2, 2016).

Cooper then requested this Court to retransfer his appeal to the Superior Court or permit oral argument. On July 12, 2016, this Court denied the request for retransfer to the Superior Court but granted oral argument, which was heard on September 13, 2016.

At oral argument, the Department contended that because Cooper had failed to file post-trial motions, all his issues were waived. Cooper responds that not filing post-trial motions after a dismissal was a non-negligent mistake.[10] Further, the February 4, 2016, entry of judgment issued by the trial court prothonotary cured this "defect."

---

[10] Cooper has not provided case law to support the claim that counsel's failure to know that post-trial motions were required due to "inexperience" was non-negligent. Pointedly, in *In Re Appeal of Tenet HealthSystems Bucks County, LLC*, 880 A.2d 721 (Pa. Cmwlth. 2005), this Court held that an attorney's failure to adequately research the time for filing an appeal was negligent and an attorney's negligent conduct cannot warrant *nunc pro tunc* relief.

10

## Jurisdiction

We begin with the challenge to this Court's jurisdiction.[11] In his original Section 1983 complaint, Cooper sought monetary damages and injunctive relief for violations of his civil rights. In *Stackhouse v. Pennsylvania State Police,* 832 A.2d 1004 (Pa. 2003), our Supreme Court held that where a complaint names state-wide officers, and involves **both** money damage claims and claims for declaratory and injunctive relief, the "core of the complaint" test must be used to determine jurisdiction.

Section 762(a)(1)(i) of the Judicial Code, provides that Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the court in common pleas in:

> All civil actions or proceedings:
>
> (i) Original jurisdiction of which is vested in another tribunal by virtue of any of the exceptions to section 761(a)(1) (relating to original jurisdiction).

42 Pa. C.S. §762(a)(1)(i). Section 761(a)(1) of the Judicial Code provides that:

> The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:
>
> > (1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:

---

[11] Our standard of review following a non-jury trial considers whether the trial court's findings are supported by competent evidence and whether the trial court erred in the application of the law. *M & D Properties, Inc. v. Borough of Port Vue*, 893 A.2d 858, 861 n.4 (Pa. Cmwlth. 2006). As to questions of law, our scope of review is plenary, and our standard of review is *de novo*. *Zampogna v. Law Enforcement Health Benefits, Inc.*, 81 A.3d 1043, 1046 n.6 (Pa. Cmwlth. 2013), *petition for allowance of appeal granted*, 99 A.3d 531 (Pa. 2014).

* * *

> (iii) actions or proceedings conducted pursuant to Chapter 85 (relating to matters affecting government units)….

* * *

> (v) actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of ... trespass.

42 Pa. C.S. §761(a)(1).

Our Supreme Court has construed subsection (v) above to include civil rights actions brought in state courts under 42 U.S.C. §1983, explaining that the civil rights statute creates

> a species of tort liability. As such, these claims are pressed in a civil action, sounding in trespass….

*Balshy v. Rank,* 490 A.2d 415, 420 (Pa. 1985). The Supreme Court reasoned that there are similarities between state tort actions (*e.g.,* trespass) and civil rights actions. Accordingly, it concluded that for purposes of *appellate* jurisdiction, tort actions against the Commonwealth government or its officers and actions brought under Section 1983 should be appealed to the Commonwealth Court.

In sum, appellate jurisdiction over this matter lies with the Commonwealth Court of Pennsylvania.

### Post-trial Motions

We turn next to the question of whether Cooper was required to file post-trial motions in order to preserve the issues raised in his appeal. Post-trial

12

motions are required by the Pennsylvania Rules of Civil Procedure, which states, in relevant part, as follows:

Rule 227.1.  Post-Trial Relief

(a)  After trial and upon the written Motion for Post-Trial Relief filed by any party, the court may

(1)  order a new trial as to all or any of the issues; or

(2)  direct the entry of judgment in favor of any party; or

(3)  remove a nonsuit; or

(4)  affirm, modify or change the decision; or

(5)  enter any other appropriate order.

(b)  Except as otherwise provided by Pa.R.E. 103(a), post-trial relief may not be granted unless the grounds therefor,

(1)  if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method of trial; and

(2)  are specified in the motion.  The motion shall state how the grounds were asserted in pre-trial proceedings or at trial.  *Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.*

(c)  Post-trial motions shall be filed within ten days after

(1)  verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or

13

> (2) notice of nonsuit or the filing of the decision in the case of a trial without jury.
>
> If a party has filed a timely post-trial motion, any other party may file a post-trial motion within ten days after the filing of the first post-trial motion.
>
> * * *

Pa. R.C.P. No. 227.1 (emphasis added).

In *Chalkey v. Roush*, 805 A.2d 491 (Pa. 2002), our Supreme Court held that an appellant will be deemed to have waived all issues not raised in a timely post-trial motion. In *Chalkey*, a property owner instituted a suit in equity to set aside a sale of her real property to her attorney. She claimed that her attorney had exerted undue influence over her and convinced her to sell for less than the property's value. A bench trial was held, after which the trial court voided the sale of the property. The defendant, who did not file post-trial motions, appealed to the Superior Court. The Superior Court held that because the trial court had not entered a decree *nisi*, the time for filing post-trial motions had not yet began to run.[12] The Supreme Court granted *allocatur*.

The Supreme Court explained that in 1984, it "adopted Rules 227.1 through 227.4 to establish uniform procedures for post-trial relief in actions at law and equity, and actions tried with or without a jury." *Chalkey*, 805 A.2d at 494. Specifically, "[g]rounds not specified by a party in post-trial motions pursuant to Rule 227.1 shall be deemed waived on appellate review." *Id*. The Supreme Court

---

[12] Under Pa. R.C.P. No. 1517, rescinded December 16, 2003, the trial court had to issue a decree *nisi*, which is an interlocutory judgment. Once entered, the parties could file objections; if no objections were made the judgment became final. Because the decree *nisi* was never filed, the Superior Court reasoned that the parties were not given an opportunity to object and the judgment did not become final.

explained that the new rule had resulted in "confusion in the courts below" as to whether a litigant's failure to file post-trial motions could be excused where it was unclear that the trial court's opinion was a final order or where the trial court had failed to comply with the Pennsylvania Rules of Civil Procedure. The Supreme Court held that failure to file a post-trial motion could not be excused in either case. Rather, post-trial motions must be filed in order to preserve issues on appeal, and every order that falls within the parameters of Rule 227.1(c) is subject to the post-trial motion procedure.[13]

In *City of Philadelphia v. New Life Evangelistic Church*, 114 A.3d 472 (Pa. Cmwlth. 2015), we considered the implications of *Chalkey*. We concluded that there is no air in the Supreme Court's ruling. A trial court's order, following trial, is not final until the trial court rules on post-trial motions. We explained as follows:

> In [*Chalkey*], our Supreme Court held that the post-trial motion requirements set forth in Pa. R.C.P. No. 227.1 are mandatory in both law and equity matters. *Chalkey*, 805 A.2d at 496. The Supreme Court held that "there is no excuse for a party's failure to file post-trial motions from a trial court's order following an equity trial." *Id*. "Under Rule 227.1, a party must file post-trial motions at the conclusion of a trial in *any* type of action in order to preserve claims that the party wishes to raise on appeal. In other words, a trial court's order at the conclusion of a trial, whether the action is one at law or in equity, simply cannot become final for purposes of filing an appeal until the court decides any timely post-trial motions." *Id*. at 496 (emphasis in original).

---

[13] Because the law had been unclear, the *Chalkey* holding was made prospective. Accordingly, the Supreme Court affirmed the Superior Court's order remanding to the trial court.

15

*City of Philadelphia*, 114 A.3d at 477.

Here, the Commonwealth did not raise Cooper's failure to file post-trial motions; it was raised by the Superior Court. The question, then, is whether Cooper's failure to file post-trial motions has been waived.

In *Borough of Harveys Lake v. Heck*, 719 A.2d 378 (Pa. Cmwlth. 1998), the borough appealed a decree *nisi* of the trial court denying its request for removal of a structure built by a property owner. On appeal, we explained that

> [e]ven though neither party has raised the issue of whether this court has jurisdiction to consider the [b]orough's appeal when it failed to preserve any issues for review by not filing post-trial motions pursuant to Pa. R.C.P. 227.1, the question of appealability implicates the jurisdiction of this court - a non-waivable matter - so that the failure of the parties to raise the issue does not prevent this court from doing so *sua sponte. Robinson v. City of Philadelphia*, 706 A.2d 1295 (Pa. Cmwlth. 1998).

*Id.* at 380 n.4. Accordingly, we held that the borough's "failure to file post-trial motions results in a waiver of all issues for appellate review and requires that the appeal be dismissed." *Id*. at 380.

More recently, in *Gold v. Butler Area Sewer Authority*, (Pa. Cmwlth., No. 1846 C.D. 2015, filed May 4, 2016), we concluded, again, that failure to file post-trial motions may be raised by this Court *sua sponte*. In *Gold*, an employee filed an employment discrimination action against the sewer authority. The trial court, after a bench trial, concluded that the employee had not met his burden. The employee appealed to Superior Court and, following direction by the trial court, filed a Rule 1925(b) statement. The Superior Court then transferred the matter to this Court.

16

We concluded that "waiver due to failure to file post-trial motions will not be remedied by listing those issues in a Rule 1925(b) statement." *Gold*, slip op. at 10 (quoting *The Ridings at Whitman's Homeowners Association v. Schiller*, 811 A.2d 1111, 1114 n.4 (Pa. Cmwlth. 2002)). We then summarized the law on the filing of post-trial motions as follows:

> The Pennsylvania Supreme Court has stated: "Under [Pa. R.C.P. No.] 227.1, a party **must file post-trial motions** at the conclusion of a trial in *any* type of action in order **to preserve claims** that **the party wishes to raise on appeal**." *Chalkey*[, 805 A.2d at 496] (bolded emphasis added). Our Supreme Court has further held: "If an issue has not been raised in a post-trial motion, it is waived for appeal purposes." *L.B. Foster Co. v. Lane Enters., Inc.*, 710 A.2d 55, 55 (Pa. 1998). Moreover, this Court has consistently ruled: "Where a party fails to file timely post-trial motions after a bench trial, no issues are preserved for this Court to review." *Liparota v. State Workmen's Ins. Fund*, 722 A.2d 253, 256 (Pa. Cmwlth. 1999); *see also P.S. Hysong v. Lewicki*, 931 A.2d 63, 67 (Pa. Cmwlth. 2007) (There is "overwhelming authority that the failure of an appellant to file post-trial motions in a proceeding to which [Pa. R.C.P. No.] 227.1 applies results in a waiver of issues[.]"); *Schiller*, 811 A.2d at 1116 ("[The appellants] failed to file post-trial motions thus waiving their issues on appeal[.]"); *[Harveys Lake],* 719 A.2d at 380 ("A party's failure to file post-trial motions results in a waiver of all issues for appellate review and requires that the appeal be dismissed."). "Consequently, when [the employee] failed to file post-trial motions within ten days following the trial court's order, the issues [he] sought to raise in [his] concise statement of errors complained of on appeal were waived." *City of Phila[delphia*, 114 A.3d at 478-79].

*Id.*, slip op. at 10-11(emphasis in original).

The circumstances in the case *sub judice* are identical to *Gold.* Cooper filed an appeal to Superior Court and filed a Rule 1925(b) statement, as

17

ordered by the trial court. Cooper should have filed post-trial motions. Even though the Commonwealth did not raise the issue on appeal, it implicates the jurisdiction of the Court and, thus, cannot be waived. *Harveys Lake*, 719 A.2d at 380 n.4.

### Conclusion

Because Cooper did not file post-trial motions, we must conclude that all his issues have been waived for appellate review. Accordingly, the appeal is dismissed and the order of the trial court is affirmed.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bruce X. Cooper,
                Appellant

              v.

Department of Corrections,
Randall Britton, Dorina Varner,
Joel Keller, and Brian Corbin

:
:
:
:
:   No. 691 C.D. 2016
:
:
:
:
:

## **O R D E R**

AND NOW, this 26th day of October, 2016, the order of the Court of Common Pleas of Huntingdon County, dated November 2, 2015, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge