**In Re: APPEAL OF TENET HEALTHSYSTEMS BUCKS COUNTY, LLC.**

**From the Bucks County Board of Assessment Appeals.**

**Tax Parcel Nos. 49–024–039 and 49–024–039–006.**

**Municipality: Warminster Township.**

**Assessment for the Year 2000.**

**Property of Tenet HealthSystems Bucks County, LLC.**

**Appeal of: Tenet HealthSystems Bucks County, LLC.**

Commonwealth Court of Pennsylvania.

Argued June 6, 2005.

Decided Aug. 10, 2005.

Jonathan W. Hugg, Philadelphia, for appellant, Tenet HealthSystems Bucks County, LLC.

Thomas J. Profy, III, Langhorne, for appellee, Centennial School District.

BEFORE: SMITH–RIBNER, J., LEAVITT, J., and JIULIANTE, Senior Judge.

OPINION BY Judge LEAVITT.

Tenet HealthSystems, LLC, appeals an order of the Court of Common Pleas of Bucks County (trial court) that denied its request for a *nunc pro tunc* tax assessment appeal.[1] The statute governing Tenet's appeal was incorrectly published in *Purdon's Statutes,* and Tenet relied upon this erroneous version to determine the deadline for its appeal. As a result, Tenet filed three weeks too late. In this case, we consider whether an error in a commercial publication of the statute will justify the filing of an appeal *nunc pro tunc.*

In September of 1998, Tenet acquired Bucks County Hospital. On August 24, 1999, Tenet appealed the hospital's 2000 tax assessment to the Bucks County Board of Assessment Appeals (Board).[2] Tenet believed its appeal to be timely because Section 8(c) of the Third Class County Assessment Board Law (Assessment

---

[1] The Centennial School District is the Appellee in the case before this Court. Warminster Township and the Bucks County Board of Assessment Appeals filed a Notice of Non–Participation with this Court.

[2] Tenet filed two appeals: parcel # 49–024039 for a hospital building and real property assessed at a total of $1,162,190; and parcel # 49–24–39–006 for a hospital and real estate assessed at a total of $111,700. Tenet indicated on the appeals that the Bucks County Hospital was comprised of two buildings and the real estate for a combined market value of $8,450,000 as opposed to the County market value for the combined properties of $25,006,200. The Board consolidated the appeals for consideration, and rejected the appeals in a single letter dated September 7, 1999.

Law),[3] as published by West Publishing Company in *Purdon's,* stated that the deadline for filing tax assessment appeals was the "first day of September." However, in Bucks County the actual deadline was August 1, 1999, and so Tenet's appeal was dismissed as untimely. Tenet appealed the Board's dismissal, asserting that the trial court should direct the Board to hear its appeal *nunc pro tunc.*[4]

At the hearing before the trial court, Tenet produced evidence that the pocket part of *Purdon's* contained an error in Section 8(c) of the Assessment Law. As it appeared in *Purdon's* on the day Tenet filed its appeal, Section 8(c) stated as follows:

> Any person ... desiring to make an appeal shall, *on or before the first day of September,* file with the board an appeal, in writing....

72 P.S. § 5349(c) (West 1999 Pocket Part)(emphasis added).[5] The true language of this provision, as amended in 1996, was as follows:

> Any person ... desiring to make an appeal shall, on or before the first day of September *or the date designated by the county commissioners if the option under clause (2) of subsection (a) is exercised,* file with the board an appeal, in writing....

Section 8(c) of the Act of July 2, 1996, P.L. 498 (emphasis added). The option in "clause (2) of subsection (a)" is as follows:

> *"The county commissioners may designate a date no earlier than the first day of August* as the date on or before which any person desiring to appeal from any assessment shall file with the board an appeal, in writing, ....."

Section 8(a)(2) of the Assessment Law, 72 P.S. § 5349(a)(2) (emphasis added). Unbeknownst to Tenet, on January 2, 1997, the Bucks County Commissioners exercised the "clause (2) of subsection (a)" option by adopting a resolution that designated August 1 as the deadline for filing a tax assessment appeal.[6]

The record before the trial court revealed several other important facts. At his deposition, Tenet's counsel explained that he personally reviewed Section 8(c) of the Assessment Law, as it appeared in *Purdon's,* at least twice before August 1, 1999. He acknowledged that his review was confined to subsection (c) and did not cover the other subsections of Section 8. He did not consult with any other person or attorneys, and he did not contact the Board to determine the deadline for an assessment appeal. The record also showed that notice of the August 1, 1999, filing deadline for tax year 2000 assessment appeals was advertised on June 25, 1999, in both the *Bucks County Courier Times* and *The Intelligencer.* Finally, the August deadline for appeals was noted in the first sentence of text of the Bucks County Property Assessment Appeal

---

3. Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. § 5349(c). This statute is generally referred to as the "Third Class County Assessment Board Law." *See, e.g.,* Section 1 of the Act of July 2, 1996, P.L. 498.

4. Tenet appealed pursuant to Section 9 of the Assessment Law, 72 P.S. § 5350(appeals to court). Because the Board dismissed Tenet's appeal without a hearing there was no record developed before the Board. Pursuant to 2 Pa.C.S. § 754, the trial court heard Tenet's appeal *de novo,* making a record on the legal question of whether Tenet had a right to proceed *nunc pro tunc.*

5. *Purdon's* has since been corrected.

6. The appeal date of August 1 became effective "in the calendar year 1997, and each year thereafter." RESOLUTION, BUCKS COUNTY BOARD OF COMMISSIONERS (January 2, 1997). Reproduced Record at 257a (R.R. ____).

Form.[7] This appeal form was available to any taxpayer seeking to appeal an assessment.

The trial court rejected Tenet's request to proceed *nunc pro tunc*. It held that Tenet failed to show the extraordinary circumstances needed for a *nunc pro tunc* appeal.

First, the trial court refused to find that an error in *Purdon's* could in any way be attributed to the Board, so as to support a finding that there had been a breakdown in the Board's operations. Thus, the trial court found distinguishable case law precedent, cited by Tenet, holding that agency's error in causing the filing of a timely appeal will permit an appeal to proceed *nunc pro tunc*. Here, the Board did nothing to cause Tenet's tardy appeal.

■ Second, the trial court concluded that the error in *Purdon's* at 72 P.S. § 5349(c) did not excuse Tenet. When read in its entirety, Section 8 of the Assessment Law, as it appeared in *Purdon's* on the day Tenet appealed, alerted the reader to the possibility of an appeal deadline earlier than September 1. Specifically, Section 8(a) authorizes county commissioners to fix a deadline earlier than September 1, and it was correctly printed in *Pur-*

*don's*. Indeed, Section 8(a) twice refers to a possible deadline earlier than September 1, depending on the will of the county commissioners.[8] The trial court concluded that the failure of Tenet's attorney to read all of Section 8 of the Assessment Law is what caused Tenet's appeal to be untimely. Because an attorney's negligence will not excuse a litigant from filing its appeal on time, the trial court denied Tenet the request to appeal the hospital's tax assessment *nunc pro tunc*. Tenet's appeal to this Court followed.[9]

On appeal, Tenet, again, raises the single question of whether the error of *Purdon's* in printing the text of Section 8(c) of the Assessment Law entitles Tenet to a hearing on its tax assessment appeal *nunc pro tunc*. It contends that it is entitled to rely upon *Purdon's* as a matter of statutory law and, further, justice dictates allowance of *nunc pro tunc* relief.

■ We consider, first, Tenet's claim that the General Assembly has expressly authorized members of the bar to rely upon *Purdon's* as legal evidence of Pennsylvania statutory law. The statute Tenet cites for this proposition states as follows:

---

7. The form that appears in the reproduced record states that a tax assessment appeal must be in the Board's office by August 2. R.R. at 256a. The Board interprets the Commissioners' resolution to mean that the August 1 filing mechanism, whether overnight mail or U.S. first class mail, must accomplish delivery by August 2.

8. Section 8(a) states:
   (a)(1) . . . any person desiring to appeal from any assessment shall file with the board, on or before the first day of September *or an earlier date if the option provided in clause (2) is exercised,* an appeal, in writing, designating the assessment appealed from.
   (2) *The county commissioners may designate a date no earlier than the first day of*

*August as the date on or before which any person desiring to appeal from any assessment shall file with the board an appeal, in writing, designating the assessment appealed from, provided that the notice by publication required under clause (1) is given at least two weeks prior to the date designated in accordance with this clause.*
72 P.S. § 5349(a)(1) and (2)(emphasis added).

9. Our scope of review in determining the propriety of a denial of an appeal *nunc pro tunc* is whether the trial court abused its discretion or committed an error of law. *Kaminski v. Montgomery County Board of Assessment,* 657 A.2d 1028 (Pa.Cmwlth.1995).

[t]he publication prepared by the [Legislative Reference Bureau] pursuant to this chapter shall constitute an official publication of the *Pennsylvania Consolidated Statutes* and shall be *legal evidence of the laws* contained therein including the Constitution and laws incorporated therein pursuant to section 502(a)(4) of this title (relating to preparation and contents).

1 Pa.C.S. § 503 (emphasis added). A regulation adopted by the Legislative Reference Bureau, on which Tenet relies, states as follows:

From 1975, laws that were enacted as amendments to the *Pennsylvania Consolidated Statutes* are printed in a separate official publication and are *legal evidence of the laws* contained therein, including the Constitution of Pennsylvania.

101 Pa.Code § 11.4 (emphasis added). *Pennsylvania Consolidated Statutes* are official codifications that are enacted by the General Assembly.[10] By contrast, the unofficial codification and annotation of Pennsylvania's Pamphlet Laws, known as *Purdon's*, is the work product of the West Publishing Company.

Because Pennsylvania's Pamphlet Laws are organized by chronology, not subject, *Purdon's* has long served legal practitioners. As Judge Robert E. Woodside has explained:

Much of our law, civil and criminal, developed in the past century as part of the common law, but during this century more and more statutes replaced the common law. Unlike the so-called "code states" which from their formation depended solely upon an organized single code containing all the statutory law of that state, Pennsylvania's statutes "grew like Topsy." As a result, *the only way to find the statutes on a particular subject was through digests such as West's Statutes and, more recently, Purdon's Pennsylvania Statutes.* Purdon's has [served] the profession well becoming "the Bible" of the statutory law, but the "official" statutes are in the Pamphlet Laws and not Purdon's.

ROBERT E. WOODSIDE, PENNSYLVANIA CONSTITUTIONAL LAW 307 (1985) (emphasis added). Accordingly, while *Purdon's* has been the key to finding statutory law in Pennsylvania, it is not itself positive law. By contrast, Pennsylvania's official codification of its statutes is positive law.

The distinction between the official and unofficial codification of Pennsylvania's statutes can be seen in the form of citation. The citation difference is itself a signal as to which is positive law, which has been explained as follows:

The well-informed user will recognize that a citation to "*1 Pa.C.S. § ....*" *is a citation to positive law in the form of an official code adopted by the General Assembly* and that "*1 Pa.C.S.A. § ....*" is the citation to the *Purdon's* annotated edition of that code, but that "7 P.S. § ...." is merely a citation to an *unofficial codification of a private publisher* which has no official counterpart. The uninformed user will probably not notice the difference [but the] failure to recognize the difference during the transition period can be disastrous.

---

**10.** In 1970, the General Assembly initiated a program for the future enactments of "Consolidated Pennsylvania Statutes" in "order to facilitate the codification and compiling of the law of this Commonwealth, as authorized by section 3 of Article III of the Constitution of Pennsylvania...." Act of November 25, 1970, P.L. 707, *as amended,* 1 Pa.C.S. §§ 101–1106. Thereafter, the statute was amended to change the term to "Pennsylvania Consolidated Statutes." Act of December 10, 1974, P.L. 816.

William H. Clark, Jr., *Introduction* to the PENNSYLVANIA CONSOLIDATED STATUTES, Title 1, 7 (1995) (emphasis added).

Tenet's failure to understand that 72 P.S. § 5349 is West Publishing Company's unofficial codification of Section 8 of the Assessment Law is a foundational error. The Assessment Law has not yet been codified by the General Assembly; thus, the only official publication of Section 8(c) of the Assessment Law is Pamphlet Law 1379 of 1931, and its subsequent amendments, as set forth in later pamphlet laws. Even our rules of court require that the official editions of statutes be used, *i.e.*, the pamphlet laws, as well as a "standard digest," whenever a citation to statutory law is made to an appellate court. Pa. R.A.P. 2119(b).[11] In sum, Tenet's argument that *Purdon's* has, by law or practice, become the official version of statutory law is wrong.

■ We consider, next, whether the error in *Purdon's*, even though it is not the official text of Section 8(c), was an extraordinary event that should allow Tenet to appeal its tax assessment *nunc pro tunc*. The seminal case is *Bass v. Commonwealth*, 485 Pa. 256, 401 A.2d 1133 (1979), which enlarged the basis for *nunc pro tunc* relief beyond the traditional grounds of fraud or breakdown in the court's operation. In *Bass*, this short list was expanded to include the non-negligent failure of an attorney to file an appeal.[12] In *Cook v. Unemployment Compensation Board of Review*, 543 Pa. 381, 671 A.2d 1130 (1996), the list was again expanded to cover the non-negligent circumstances of the litigant, such as hospitalization. In both *Bass* and *Cook*, as soon as the error in making a timely appeal was recognized, the litigants acted promptly, and this prompt attention to the problem was also an important factor in the Supreme Court's decision to allow a *nunc pro tunc* appeal.

Tenet directs our attention to cases applying these principles in tax assessment appeals. In *Union Electric Corporation v. Board of Assessment*, 560 Pa. 481, 746 A.2d 581 (2000), the Allegheny County Board of Appeals issued an order extending the statutory deadline for filing a tax assessment appeal. The board lacked this authority, but the Supreme Court held that the taxpayer's reliance upon this order authorized a *nunc pro tunc* appeal. Similarly, this Court allowed a *nunc pro tunc* tax assessment appeal where the taxpayer followed advice given to her in writing by the Monroe County Board of Appeals. The board's advice was erroneous. *Monroe County Board of Assessment Appeals v. Miller*, 131 Pa.Cmwlth. 538, 570

**11.** It states in pertinent part that

[c]itations of uncodified statutes shall make reference to the book and page of the Laws of Pennsylvania (Pamphlet Laws) or other official edition, and also to a standard digest, where the statutes may be found. Citations of provision of the Pennsylvania Consolidated Statutes may be in the form: "1 Pa.C.S. § 1928 (rule of strict and liberal construction)" and the official codifications of other jurisdictions may be cited similarly. Pa. R.A.P. 2119(b). *See also* 2 G. RONALD DARLINGTON ET AL., PENNSYLVANIA APPELLATE PRACTICE § 2119:7 (2004) (uncodified statutes are cited by reference to the date on which they were signed into law and the pamphlet law

number and *Purdon's* is the unofficial citation to such legislation).

**12.** In *Bass* the delay in filing the appeal for the client was caused by the illness of the attorney's secretary. The Court concluded that neither the attorney nor his secretary acted negligently, and reasoned that non-negligent conduct does not ordinarily result in liability, so that where there "has been a non-negligent failure to file a timely appeal which was corrected within a very short time, during which any prejudice to the other side of the controversy would necessarily be minimal," *nunc pro tunc* relief should be granted. *Bass*, 485 Pa. at 260, 401 A.2d at 1135–36.

A.2d 1386 (1990). This Court granted the *nunc pro tunc* appeal because the litigant had been "unintentionally misled by officials as to the proper procedure to be followed." *Id.* at 1388.

█ Tenet argues that the principles established in *Bass* and *Union Electric* require this Court to grant it *nunc pro tunc* relief. Tenet relied upon *Purdon's,* and it was the error of the Legislative Reference Bureau in failing to supervise this text that caused its filing to be late. The traditional list for *nunc pro tunc* appeals should be expanded to include "legislative breakdown;" and Tenet contends that this expansion is a small step. In addition, the equities favor Tenet because its case is even stronger than that of the taxpayer in *Union Electric,* who knew that the statutory deadline was different from that ordered by the board. Tenet did not know the statutory deadline. Finally, Tenet argues that the unusual circumstances here require the allowance of a *nunc pro tunc* appeal to avoid injustice, relying upon our holding in *Hanoverian, Inc. v. Lehigh County Board of Assessment,* 701 A.2d 288, 289 (Pa.Cmwlth.1997). We are not persuaded.

First, Tenet's reliance on *Bass* and *Union Electric* is misplaced. Tenet's premise that the Legislative Reference Bureau's failure to supervise the publication of *Purdon's* caused the error in 72 P.S. § 5349(c) is unfounded. As we have explained, West Publishing Company, not the Legislative Reference Bureau, was responsible for the error in *Purdon's* version of Section 8(c) of the Assessment Law. *Union Electric* and *Miller* permit a *nunc pro tunc* appeal where the acts of a public officer or agency have caused the litigant's delay. By contrast, it has not been demonstrated here that any person in government has misled Tenet.

Second, although it is true that this Court stated in *Hanoverian, Inc.* that *nunc pro tunc* appeals must be allowed to avoid injustice, this was *dictum.* In fact, we did not allow a *nunc pro tunc* appeal in that case.[13] In any case, our general observation in *Hanoverian, Inc.* presumed that extraordinary circumstances could be found, the *sine qua non* of any *nunc pro tunc* appeal. Here, we lack these extraordinary circumstances.

Finally, Tenet's appeal was late, as the trial court concluded, because Tenet's counsel did not read Section 8 of the Assessment Law in its entirety. Had he done so, he would have noted the critical language in Section 8(a)(1) which states that an assessment appeal must be filed with the board "on or before the first day of September or an earlier date if the option provided in clause (2) is exercised...." 75 P.S. § 7359(a)(1). Under the Statutory Construction Act of 1972, the subsections of Section 8 are *in pari materia* and must be read together to give effect to all. 1 Pa.C.S. § 1932.[14] Section 8(a)(1) states an exception to the default

---

**13.** In *Hanoverian, Inc.,* the taxpayer argued that the fact that it purchased property at a judicial sale after the statutory bar dates for filing a tax assessment appeal had passed for a purchase price that was substantially less than the assessed value constituted a "unique and exceptional circumstance" requiring the grant of a right to appeal *nunc pro tunc. Hanoverian, Inc.,* 701 A.2d at 289. This Court disagreed because when the purchase was made at the tax sale, the taxpayer knew of the property's tax assessment and that bar date for that year's appeal had passed.

**14.** It states:

(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.

(b) Statutes in pari materia shall be construed together, if possible, as one statute.

1 Pa.C.S. § 1932(a) and (b).

deadline in Section 8(c), with or without the omitted phrase. At the very least, the difference between subsections (a) and (c) should have prompted further inquiry. The official text of the Assessment Law, *i.e.,* the pamphlet law, might have been consulted. Tenet's counsel might have inquired with the Board whether the Bucks County Commissioners had exercised their authority under Section 8(a)(2) of the Assessment Law. He did neither. This failure cannot be termed, as Tenet argues, a non-negligent omission and, thus, the extraordinary circumstances needed for a *nunc pro tunc* appeal cannot be found here.[15]

This is a close case. Had Section 8 of the Assessment Law been incorrect in its entirety in *Purdon's,* the result might have been different. It is routine for lawyers in Pennsylvania to rely upon *Purdon's,* as opposed to the pamphlet laws, but there are times this routine must be broken. *Purdon's* is not legal evidence of the official version of Pennsylvania's pamphlet laws.

For these reasons, we affirm the trial court.

### ORDER

AND NOW, this 10th day of August, 2005, the order the Court of Common Pleas of Bucks County dated June 8, 2004, in the above-captioned matter is hereby affirmed.

---

**15.** Tenet argues that fairness requires its appeal to proceed because it was only three weeks late and was filed as soon as Tenet learned of the error. As held in *Bass* and *Cook,* prompt action by a litigant or his lawyer is needed in order for an appeal *nunc pro* *tunc* to be allowed, and we agree that Tenet's action was prompt. However, it must first be found that the failure to file untimely was non-negligent; that condition precedent was not found here.