J-A29006-24          2025 PA Super 60

| | | |
|---|---|---|
| IN THE MATTER OF: PETERSON FAMILY IRREVOCABLE TRUST | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: DON I. AND MARJORIE R. PETERSON | : : : : : : : | No. 772 WDA 2024 |

Appeal from the Decree Entered April 4, 2024
In the Court of Common Pleas of Warren County Orphans' Court at
No(s): O.C. No. 5 of 2024

BEFORE: OLSON, J., LANE, J., and BENDER, P.J.E.

OPINION BY OLSON, J.:                    **FILED: March 13, 2025**

Appellants, Don I. and Marjorie R. Peterson (husband and wife), appeal from the April 4, 2024 decree entered in the Orphans' Court Division of the Court of Common Pleas of Warren County that denied Appellants' petition to terminate the Peterson Family Irrevocable Trust ("the Trust").[1]  We affirm.

The record demonstrates that, on April 7, 2011, Appellants, as settlors,[2] entered into an agreement to establish the Trust.  Pursuant to the trust agreement, Appellants' daughter served as the trustee ("the Trustee"), and the beneficiaries of the Trust were Appellants' two grandchildren or the

---

[1] Although the orphans' court decree denying Appellants' petition was dated April 3, 2024, the decree was not entered on the orphans' court docket until April 4, 2024.  The caption has been corrected accordingly.

[2] Section 7703 of the Uniform Trust Act defines "settlor" as "[a] person, including a testator, who creates or contributes property to a trust."  20 Pa.C.S.A. § 7703.

survivor of each beneficiary (collectively, "the Beneficiaries"). Appellants' personal residence located in Russell, Warren County, Pennsylvania was the only asset held by the Trust.[3]

On January 16, 2024, Appellants filed a petition to terminate the Trust. In their petition, Appellants asserted that they should be permitted to terminate the Trust because (1) the Trust violates federal and state guidelines for asset preservation, and (2) the relationship between Appellants and the Trustee has changed thereby "rendering [the Trust's] ongoing administration impracticable and wasteful." Petition to Terminate Trust, 1/16/24, at ¶1. On March 28, 2024, Appellants' granddaughter, who is one of the named beneficiaries of the Trust, filed an answer to Appellants' petition, contesting the termination of the Trust. On April 1, 2024, the orphans' court conducted a hearing on Appellants' petition. At the hearing, Appellants and the granddaughter were represented by separate counsel. Appellants' grandson, the other beneficiary of the Trust, as well as the Trustee also attended the hearing. On April 4, 2024, the orphans' court denied Appellants' petition to terminate the Trust. This appeal followed.[4]

Appellants raise the following issues for our review:

_____

[3] By a deed executed on April 7, 2011, Appellants' transferred ownership of their personal residence to the Trust.

[4] Both Appellants and the orphans' court complied with Pennsylvania Rule of Appellate Procedure 1925.

1. Whether [Appellants, who are] permanently [disqualified] from [the benefits of] Medicaid long-term care, can use such disqualification as an unforeseen circumstance such that termination of the [T]rust is appropriate under 20 Pa.C.S.[A.] § 7740.2(a)[?]

2. Whether [Appellants], who are still living and able to provide testimony regarding their intent in creating the [T]rust, can establish their intent for purposes of satisfying the unforeseen circumstances requirement under 20 Pa.C.S.[A.] § 7740.2(a)[?]

Appellants' Brief at 5.[5]

Appellants' issues, *in toto*, challenge the orphans' court's order denying their request to terminate the Trust pursuant to Section 7740.2(a) of the Uniform Trust Act.  In general, when

reviewing [a] decision of the orphans' court, [an appellate court's] responsibility is to assure that the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence.  In determining whether the findings of the orphans' court are supported by competent evidence, we must take as true all the evidence supporting the findings and all reasonable inferences therefrom.  Further, all conflicts in testimony must be resolved by the [orphans' court as] the sole arbitrator of credibility.  Findings of the orphans' court supported by evidence of record are entitled to the same weight given a jury verdict and must be sustained unless the [orphans'] court abused its discretion or committed an error of law.

*In re Passarelli Family Trust*, 242 A.3d 1257, 1262 (Pa. 2020) (citation omitted).  The interpretation of a trust document, however, presents a

_____

[5] Appellants' granddaughter filed a counseled brief in opposition to the argument as set forth in Appellants' appellate brief.  The Trustee filed *pro se* a statement that she joined the position expressed by Appellants' granddaughter in her appellate brief.

question of law for which our standard of review is *de novo* and our scope of review is plenary. ***In re Est. of McFadden***, 100 A.3d 645, 650 (Pa. Super. 2014) (*en banc*).

Section 7740.2 of the Uniform Trust Act states, in pertinent part, as follows:

### § 7740.2. Modification or termination of noncharitable irrevocable trust by court - UTC 412

**(a) Unanticipated circumstances.**--The court may modify the administrative or dispositive provisions of a noncharitable irrevocable trust, make an allowance from the principal of the trust[,] or terminate the trust if, because of circumstances that apparently were not anticipated by the settlor, modification, allowance[,] or termination will further the purposes of the trust. To the extent practicable, the modification or allowance shall approximate the settlor's probable intention.

**(b) Inability to administer effectively.**--The court may modify the administrative provisions of a noncharitable irrevocable trust if adherence to the existing provisions would be impracticable or wasteful or impair the trust's administration.

20 Pa.C.S.A. § 7740.2(a) and (b). As such, a plain reading of Section 7740.2 reveals that an orphans' court may **terminate** a noncharitable irrevocable trust if, due to unanticipated circumstances, termination will further the purposes of the trust. 20 Pa.C.S.A. § 7740.2(a). If an orphans' court finds that adherence to the administrative provisions stated in the trust agreement would be impracticable, wasteful, or impair the trust's administration, the orphans' court has the power to **modify** the administrative provisions but not the power to terminate of the trust. 20 Pa.C.S.A. § 7740.2(b).

"[I]t is hornbook law that the pole star in every trust is the settlor's intent and that intent must prevail." *In re Est. of Loucks*, 148 A.3d 780, 782 (Pa. Super. 2016) (ellipsis omitted), *citing Est. of Pew*, 655 A.2d 521, 533 (Pa. Super. 1994). We ascertain a settlor's intent by examining "all the language within the four corners of the trust instrument, the scheme of distribution[,] and the circumstances surrounding the execution of the instrument." *Loucks*, 148 A.3d at 782 (original quotation marks omitted), *quoting Farmers Trust Co. v. Bashore*, 445 A.2d 492, 494 (Pa. 1982). "Only when the language of the trust is ambiguous or conflicting or when the settlor's intent cannot be garnered from the trust language do the tenets of trust construction become applicable." *Loucks*, 148 A.3d at 782; *see also McFadden*, 100 A.3d at 650 (stating, "[w]hen a will is ambiguous on its face, a court may consider extrinsic evidence to glean the testator's intent"). In interpreting a settlor's intent, courts "are not permitted to construe a provision in a trust so as to destroy or effectually nullify what has always been considered the inherent basic fundamental right of every owner of property to dispose of his[, or her,] own property as he[, or she,] desires, so long as it is not unlawful." *Id.* (original quotation marks omitted). "[T]he intent of the settlor, if not contrary to law, must prevail." *In re Trust B Under Agreement of Richard H. Wells Dated September 28, 1956* ("*In re Trust B*"), 311 A.3d 1057, 1068 (Pa. 2024).

Appellants assert that their intent in establishing the Trust was to shield their personal residence from Medicaid asset eligibility considerations and

subsequent claims for long-term healthcare that they anticipate incurring in the future.[6] Appellants' Brief at 26, 37 (stating Appellants "wish to terminate the Trust because they anticipate applying for Medicaid [and] doing so will open the home to possible collection efforts"). Appellants acknowledge that generally a residence is excluded from Medicaid eligibility consideration but, in their situation, when they "added their home to [the] Trust, and then allowed the Trust to distribute funds to their estate, [the] home became

---

[6] "Medicaid is a joint federal-state program providing medical assistance to the needy." *Lewis v. Alexander*, 685 F.3d 325, 331 (3rd Cir. 2012). Medicaid provides assistance to the "categorically needy" and the "medically needy." *Id.* at 332. The "categorically needy" are persons "who qualify for public assistance either under the Supplemental Security Income (["]SSI["]) program or other federal programs." *Id.* "The medically needy are those [persons] who would qualify as categorically needy (because they are disabled, *etc.*) but whose income and/or assets are substantial enough to disqualify them." *Id.* Pennsylvania has elected to participate in Medicaid and, therefore, is subject to federal regulations governing its administration. *Id.*

"Every [s]tate participating in Medicaid must provide assistance to the categorically needy. States need not provide assistance to the medically needy." *Id.* "Medically needy" individuals must qualify for the financial assistance provided through Medicaid. *Id.* at 332 n.2. When a "medically needy" individual's income level exceeds the eligibility level, the individual must "spend down" his or her income before receiving assistance. *Id.* In other words, a "medically needy" individual must pay for medical expenses using their own assets until those assets decline to a point at which the individual financially qualifies for assistance.

Pertinent to the case *sub judice*, in 1993, the United States Congress "established a general rule that trusts would be counted as assets for the purpose of determining Medicaid eligibility." *Id.* at 333; *see also* 42 U.S.C.A. § 1396p(d) (stating that, the rules governing an individual's eligibility for, or amount of, Medicaid benefits, apply to a trust established by such individual, with limited exceptions (none of which apply in the case *sub judice*)).

eligible to be counted for Medicaid purposes[.]" *Id.* at 41. Appellants assert that, when they met with an attorney in 2011, "they thought they were creating a trust that save[d] their home from healthcare creditors and preserve[d] the home for future generations." *Id.* at 42. Appellants argue that the intent of the Trust, which was to shield their residence from creditors so ownership of the real property would pass to their grandchildren, cannot be accomplished because under the terms of the trust agreement their residence is subject to future claims by Medicaid for long-term healthcare expenses. *Id.* at 34-43. Appellants further contend that, at the time they formed the Trust, they did not anticipate that their relationship with the Trustee (their daughter) would "sour" such that the Trustee no longer adequately served Appellants' best interests.[7] *Id.* at 43.

In denying Appellants' petition to terminate the Trust, the orphans' court explained,

> In the instant case, it is clear that [Appellants'] state[d] intent was to have the use of a life estate in the property until their demise with the real estate passing to the grandchildren. There is no mention of the avoidance of a consequence with the possibility

---

[7] To the extent that Appellants assert that termination of the Trust is justified pursuant to Section 7740.2(b) because their conflict and strained relationship with the Trustee makes administration of the Trust impracticable (*see* Appellants' Brief at 45), we find this argument misplaced. Appellants' petition requested that the orphans' court **terminate** the Trust because of their relationship with the Trustee. As stated *supra*, Section 7740.2(b) permits the orphans' court to **modify** the administrative procedures of the Trust if the stated procedures cause administration of the trust, *inter alia*, to be impracticable. 20 Pa.C.S.A. § 7740.2(b). The orphans' court is not permitted to terminate the trust pursuant to Section 7740.2(b).

concerning Medicaid but there was testimony to that effect. Neither petitioner is currently in ill health. [Mr.] Peterson is 100% disabled with a Veteran's benefit and qualifies for long[-]term care based upon his military service. [Mrs.] Peterson did not detail any condition which may require skilled nursing care at this time. [Appellants'] daughter as trustee has not performed any duties regarding the trust other than assenting to any requests [Appellants] have made for home improvement.

As all parties are not in agreement concerning the modification, and the initial document was clear regarding the parties' intent and the fact that the [T]rust was irrevocable, the [orphans' c]ourt denies the [requested relief in the form of termination].

Orphans' Court Opinion, 4/4/24, at 5.

A review of the four corners of the trust agreement reveals that Appellants as settlors transferred ownership of a single asset, their personal residence, to the Trust and that the subsequent beneficiaries of the Trust were Appellants' two grandchildren. Peterson Family Irrevocable Trust Agreement, 4/7/11, at § 1. Appellants' daughter was named as Trustee. *Id.* at Opening Paragraph. The trust agreement stated,

It is the specific intention of [Appellants] to create the power in the Trustee and in said Trustee's sole discretion under this Trust to provide income and support for [Appellants] and Subsequent Beneficiaries and to protect the assets of the Trust pursuant to the conditions set forth in this Trust Agreement. Said income and support may include, but is not limited to, expenditures for [Appellants'] and Subsequent Beneficiaries' health, education, real estate purchases[,] and/or promising business opportunities. In order to protect the Trust assets, the Trustee in her sole discretion, may withhold distribution under circumstances in which [Appellants] or Subsequent Beneficiaries will not personally enjoy said distribution; said circumstances, including but not limited to, insolvency, pending divorce[,] or other civil litigation and bankruptcy.

*Id.* at § 2. The trust agreement further stated that

- 8 -

> While in the control of the Trustee and until actually paid over to [Appellants] thereof, the interest of [Appellants] in the income or principal of the Trust shall not be subject to assignment or pledge by [Appellants], the claims of creditors of [Appellants], or attachment by any legal or equitable procedure.

*Id.* at § 3(B). The Trust was set to automatically expire upon (1) the deaths of Appellants, and (2) the first occurring of either the deaths of Appellants' grandchildren or Appellants' grandson reaching the age of 27 and Appellants' granddaughter reaching the age of 25. *Id.* at § E.

A plain reading of the trust agreement demonstrates that Appellants intended to establish a trust, the assets of which would provide Appellants income and support for, *inter alia*, their healthcare needs. *Id.* at § 1. Appellants further intended to protect the assets of the Trust from Appellants' creditors or from other legal obligations. *Id.* at § 3. Although the trust agreement does not specifically state that the Trust was established to protect the Trust's assets (Appellants' residence) from claims under Medicaid, Section 3 of the trust agreement clearly states that the intent of the trust was to shield the trust assets from claims arising from Appellants' debts or other legal obligations, which would include any claims for healthcare services provided under Medicaid.

We agree with Appellants that, at the time they formed the Trust, federal and state laws governing Medicaid may have, in certain instances, exempted the residence from claims asserted under Medicaid if the residence remained titled in Appellants' names. We further agree that, at the time the trust was formed, because ownership of the residence was held by the Trust

and Appellants were beneficiaries of the Trust and its assets (**see** Peterson Family Irrevocable Trust Agreement, 4/7/11, at § 1), the assets of the Trust (the residence) were no longer shielded from claims made under Medicaid. Appellants testified that, at the time they formed the Trust, they believed that the Trust would protect their home from being used to cover healthcare costs, including nursing home care. N.T., 4/1/24, at 17-18, 37-38.

The issue presented is whether Appellants' mistaken belief at the time they formed the Trust, namely that they believed the Trust would preclude their residence from being used to satisfy healthcare claims under Medicaid, gives rise to an unanticipated circumstance such that the orphans' court is permitted to terminate the Trust under Section 7740.2(a). This issue appears to be one of first impression. For nearly two centuries, courts have held that "ignorance of the law furnishes no excuse to any person, either civilly or criminally; and, consequently, a mistake in law cannot be relieved against, either in equity or at law." **Good v. Herr**, 7 Watts & Serg. 253, 1844 WL 4989 (Pa. 1844); **see also First Nat'l Bank of Sunbury v. Rockefeller et. al.**, 5 A.2d 205, 206 (Pa. 1939) (reiterating that, ignorance or mistake of law with a full knowledge of the facts cannot be grounds for relief); **Acme Mkts. v. Valley View Shopping Ctr.**, 493 A.2d 736, 737 (Pa. Super. 1985); **Wilson Area Sch. Dist. v. Skepton**, 895 A.2d 1250, 1255 (Pa. 2006); **Commonwealth v. Bradley**, 232 A.3d 747, 759 (Pa. 2020). "[O]ne is presumed to know the law and [] to hold otherwise would render legal accountability unenforceable." **Valley View**, 493 A.2d at 737. "[T]o allow

mistake or ignorance of the law to void actions taken by parties would subvert the effective administration of the law." *Id.*; *see also Bradley*, 232 A.3d at 759 (stating that, if mistake of law were accepted as providing grounds for relief, "it would provide an absolute defense to any prosecution where a defendant asserts a good-faith, yet erroneous, understanding of the law" (citation and original quotation marks omitted)). Our Supreme Court has defined "mistake of law" as "a mistake as to the legal consequences of an assumed state of facts." *Betta v. Smith*, 81 A.2d 538, 539 (Pa. 1951). "A mistake of law occurs where a person is truly acquainted with the existence or nonexistence of facts, but is ignorant of, or comes to an erroneous conclusion as to, their legal effect." *Valley View*, 493 A.2d at 737 (citation omitted).

In their petition to terminate the Trust, Appellants asserted that their "purpose in establishing the [T]rust was 'to protect the assets of the Trust' by rendering [the] assets of the [T]rust unavailable as an asset if [one or both of them] were to enter skilled nursing home care in the future and require application for public benefits, including [Medicaid]." Petition to Terminate Trust, 1/16/24, at ¶10. Appellants further averred that the trust agreement, as written, "ensures that the assets of the [T]rust will nonetheless be treated as an available resource if [one or both of them] requires application for Medicaid in the future." *Id.* at ¶12.

Appellants' erroneous belief that the terms of the trust agreement exempted the Trust assets (their personal residence) from consideration for

Medicaid eligibility, and shielded the asset from claims asserted under Medicaid, is a mistake of law. The "fact" is the existence of the trust agreement, as well as the terms set forth therein. Appellants' misunderstanding of the legal consequences of the trust agreement, and the terms contained therein, is a mistake of law. *See Valley View*, 493 A.2d at 737. Therefore, Appellants are not entitled to relief pursuant to Section 7740.2(a) as a result of their mistake concerning the legal consequences arising from creation of the Trust.

Moreover, Section 7740.2(a) permits the orphans' court to terminate a trust if, because of unanticipated circumstances, termination would further the purpose of the trust. 20 Pa.C.S.A. § 7740.2(a). "Unanticipated circumstances" are circumstances to which no advance thought was given or that were not foreseen or expected. *See* https://www.merriam-webster.com/dictionary/anticipate (last visited Mar. 12, 2025). Appellants' mistake regarding the legal consequences of the trust agreement is not an unforeseen fact about the future, but, rather, a mistake in the legal effect and law concerning the Trust. Therefore, we discern no error of law or abuse of discretion in the orphans' court's denial of Appellants' petition to terminate the Trust.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/13/2025