J-A12001-25

2025 PA Super 295

| IN RE: HESS KLINE, DECEASED | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: P.J. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 637 EDA 2024 |

Appeal from the Order Entered December 6, 2023
In the Court of Common Pleas of Montgomery County
Orphans' Court at No: 1988 X3737

BEFORE: STABILE, J., SULLIVAN, J., and LANE, J.

OPINION BY STABILE, J.:                          **FILED DECEMBER 31, 2025**

Appellant, P.J., appeals from the December 6, 2023, order denying his petition for an accounting. We affirm.

The record reveals that decedent Hess Kline's will (the "Will") divided his residuary estate into marital and nonmarital portions, each governed by a trust. This litigation arises from the nonmarital trust. Hess died in 1985, and his wife, Helyn, died in 1988. Upon Helyn's death, the undistributed income from the nonmarital trust was divided into equal shares for the Kline's two daughters, Barbara Ann Eldridge and Denise Jo Levy, per the instructions in the Will. Each daughter's portion is governed by a trust, as set forth in the Will. The instant action pertains to Denise Jo Levy's Trust (the "Trust"). Levy is the income beneficiary during her lifetime. Appellant is Levy's son. He is one of three contingent remainder beneficiaries of the Trust, along with his

brothers, S.J. and W.J. The three brothers will divide the principal among them upon Levy's death.

Appellant's petition for an accounting was directed at Robert I. Friedman (the "Trustee"), the current successor co-trustee along with Levy. Levy, S.J., and W.J. have not participated in this action. In his petition, Appellant alleged that, since 2020, the net income of Levy's trust was $37,940.00 and the distributions to Levy were $70,650.00. Petition for Accounting, 1/30/23, at ¶ 16.[1] The question before us is whether the distributions to Levy were authorized under the terms of the governing instrument and/or the Uniform Principal and Income Act ("UPIA"), 20 Pa.C.S.A. § 8101 *et. seq*. Appellant claims the Trustee made distributions from the Trust's principal in violation of the express terms of the governing instrument. The Trustee denies that he made any disbursements from principal. Rather, the Trustee claims he made lawful adjustments between principal and income as authorized under the governing instrument and under the UPIA. The orphans' court, basing its ruling on the submitted record as per the parties' agreement, found in favor of Trustee and entered the order presently before us.

Appellant filed this timely appeal in which he presents two questions:

_____

[1] The Trustee filed his answer and new matter on March 23, 2023. By order of June 27, 2023, the parties agreed to submit this matter to the orphans' court on briefs.

Whether the lower court erred in ruling the power to adjust between principal and income under 20 Pa.C.S.A. §§ 8301-8304 was authorized under the trust instrument?

Whether the lower court erred in approving the fiduciary's adjustment between principal and income?

Appellant's Brief at 6.

On review of a decision from an orphans' court, we must determine whether the orphans' court committed an error of law and whether the record supports the orphans' court's findings of fact. *In re Estate of J.L.C.*, 321 A.3d 999, 1003 (Pa. Super. 2024). Because the orphans' court sits as finder of fact, we are deferential to the court's findings of fact and credibility determinations. *Id.*

With his first argument, Appellant claims the Trust instrument expressly forbids distribution from principal except in emergencies. Appellant argues that the UPIA does not apply in this case because its terms conflict with those of the Trust instrument and because the enactment of the UPIA postdates the creation of the Trust. Our primary goal in interpreting a trust instrument is to effect the settlor's intent. *In re Wilton*, 921 A.2d 509, 513 (Pa. Super. 2007). We determine the settlor's intent by examining "all the language within the four corners of the trust instrument, the scheme of distribution[,] and the circumstances surrounding the execution of the instrument." *In re Peterson Family Irrevocable Trust*, 333 A.3d 453, 458 (Pa. Super. 2025). "Only when the language of the trust is ambiguous or conflicting or when the settlor's intent cannot be garnered from the trust language do the tenets of

- 3 -

trust construction become applicable." ***Id.*** The interpretation of a trust document is a question of law; our standard of review is *de novo* and our scope of review is plenary. ***Id.*** at 457. Further, the UPIA provides that a fiduciary shall administer a trust or estate "in accordance with the governing instrument, even if there is a different provision in this chapter." 20 Pa.C.S.A. § 8103(a)(1).

Thus, we begin with an analysis of the pertinent language in the governing instrument:

> 1. My Trustees shall distribute to each daughter all of the net income of her trust in convenient periodic installments.
>
> 2. My Trustees may also distribute to a daughter, or apply for her benefit, from time to time, such portion or portions of the principal of her trust as my Trustees, in their absolute discretion, **may deem necessary for any emergency affecting such daughter, taking into account her income and assets from all other sources. It is my intention that principal distributions be made to a daughter only under the most extraordinary circumstances and I do not anticipate the probability that any principal distributions will be required.**
>
> 3. Upon the death of a daughter (or upon the death of the survivor of my wife and myself if a daughter is not then living), the balance of principal and undistributed income, if any, then remaining of her trust shall be divided into as many equal shares as there are children of each said daughter then living and children of each said daughter then deceased who have left issue then living. [....]

Will, Article Sixth, ¶¶ (D)(1-3) (emphasis added).[2]

---

[2] The Will appears in the certified record as Exhibit A to Appellant's January 30, 2023 petition. The Trust instrument is included in the text of the Will.

- 4 -

Appellant argues that the bold portion of Article Sixth plainly forbids invasion of the principal barring an emergency, and that no such emergency justified the principal distributions to Levy in this case. Appellant is correct in this regard, but the Trustee does not rely on Article Sixth and does not dispute the absence of an emergency. The Trustee and the orphans' court rely instead upon language in the instrument that addresses adjustments between principal and income:

> My fiduciaries, in their absolute discretion, shall have the authority to claim items of deduction in either the income tax returns or estate tax return, as they may decide, without the consent of the beneficiaries, without liability on their part for so doing, **and, in their discretion, to make or not make adjustments or apportionments among the beneficiaries or as between principal and income.**

*Id.* at Article Ninth (emphasis added). The Trustee claims he made an equitable adjustment between principal and income and, therefore, that he did not make a distribution from principal.

Appellant argues that Article Ninth, in its reference to adjustment of principal and income, "must be read in context of the second paragraph's intended purposes—governing items of deduction in income tax and/or estate tax returns." Appellant's Brief at 20. According to Appellant, this provision permits an adjustment between principal and income following the sale of a trust asset that triggers capital gains tax, so that Levy's expected income distributions do not decline in the year following the sale. Appellant's Brief at 23.

The only support Appellant offers for his proposed interpretation of Article Ninth is that the authorization of adjustments between principal and income appears in the same sentence as the authorization to claim tax deductions. But that sentence does not expressly state that principal and income adjustments are authorized **only** in the event of the sale of a trust asset. Indeed, Article Ninth does not address asset sales at all. Appellant's reading of Article Ninth requires us to read into the instrument language that is not there. Article Ninth clothes the trustee with discretion to determine when a tax deduction and/or an adjustment between principal and income is appropriate. The operative language, for purposes of the present dispute, appears in an independent clause that expressly clothes the Trustee with unqualified discretion to make, or not make, adjustments.

Finally, we observe the Trust instrument absolves fiduciaries from liability for decisions made in good faith, so long as the fiduciary obtains approval from a majority of affected beneficiaries who are then *sui juris*. Will, Article Twelfth. In this case, the Trustee acted with the approval of Levy, S.J., and W.J.—three of the four *sui juris* beneficiaries. Appellant does not dispute this fact. And, as we explain below in our analysis of the UPIA, the Trustee had a good faith basis for the adjustments in dispute. For the foregoing reasons, we conclude Appellant has failed to establish that the Trust instrument forbade the adjustments the Trustee made here. Rather, the Trust, by its express terms, permits such adjustments.

In support of his second assertion of error, Appellant argues that the orphans' court erred in concluding that the Trustee's adjustments were an appropriate exercise of his discretion. This argument requires an analysis of the UPIA which, as we will explain, applies here even though the Trust instrument predates its enactment.[3]

"To the extent her claims present 'question[s] of law, such as the interpretation of a statute, our standard of review is de novo, and the scope of our review is plenary.'" *Smith v. O'Brien*, 321 A.3d 1034, 1041 (Pa. Super. 2024). Our goal is to ascertain and effect the General Assembly's intent. 1 Pa.C.S.A. § 1921(a). First and foremost, we look to the words of the statute itself. 1 Pa.C.S.A. § 1921(b). We are mindful, also, that "[n]o

---

[3] We observe that the practice of adjusting principal predates the UPIA, as is evident in the Restatement (Second) of Trusts:

> The trustee may be given discretion in allocating receipts or expenditures to income or principal. The extent of the discretion thus conferred upon the trustee depends upon the interpretation of the trust instrument. Thus, his discretion may be limited to situations where he is in reasonable doubt whether under the law and the facts certain receipts or expenditures should be allocated to income or principal; or discretion may be conferred upon him to make such an allocation as in his opinion is fair and reasonable. The exercise by the trustee of the power thus conferred upon him is not subject to control by the court, except to prevent an abuse by the trustee of his discretion. See § 187.

Restatement (Second) of Trusts § 233, comment p (1959). Our Supreme Court has cited to § 233 (*See Pennsylvania Envtl. Defense Found. v. Commonwealth*, 161 A.3d 911, 935 (Pa. 2017)), but has never expressly adopted it.

statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S.A. § 1926.

Appellant relies on § 1926 for his argument that we should not apply the UPIA to a Trust instrument that predates it. Appellant notes that the UPIA, as codified in 20 Pa.C.S. §§ 8101-8191, is silent on its retroactive application. Appellant is incorrect. The UPIA, as drafted by our General Assembly and signed into law by our Governor, was passed into law by Act of May 16, 2002, P.L. 330, No. 50 ("Act 50"). Section 14 of Act 50 provides: "Except as otherwise provided in the governing instrument […] this act shall apply to all of the following: (1) a trust existing on or after the effective date of this act." Act of May 16, 2002, P.L. 330, No. 50, § 14.[4] The absence of § 14 of Act 50, from the text of any section or subsection of Chapter 81 of Title 20 of the Pennsylvania Consolidated Statutes, does not render it inoperative. *See*

---

[4] For ease of reference, the text of § 14 of Act 50 can be found in Title 20 of the bound volume of Purdon's Pennsylvania Statutes and Consolidated Statutes Annotated, immediately following § 8101, under the heading "Historical and Statutory Notes." The pamphlet law version of Act 50 is available on the website of the Pennsylvania Legislative Reference Bureau: www.palrb.gov/Preservation/Pamphlet-Laws/View-Document/20002099/2002/0/act/0050.pdf. Section 14 appears on page 364 of the pamphlet law. Section 14 is the final section of Act 50; immediately following § 14, the pamphlet law notes the signature of Governor Mark S. Schweiker. We observe that the Pennsylvania Legislative Reference Bureau prepares the official publication of the Pennsylvania Consolidated Statutes and pamphlet laws, whereas Purdon's, while widely cited and highly useful, is unofficial and comes from West Publishing Company. *See In re Appeal of Tenet Health Sys. Bucks Cty., LLC*, 880 A.2d 721, 724-26 (Pa. Commw. 2005). The version prepared by the Legislative Reference Bureau is the legal evidence of the statutory language. *Id.*

***Commonwealth v. Holmes***, 155 A.3d 69, 80 n.6 (Pa. Super. 2017) (*en banc*; plurality) (noting that Purdon's does not always contain the entirety of the bill our General Assembly passed).  Section 14 of Act 50 carries the binding force of any legislation passed by our General Assembly and signed into law by our Governor.  Pa. Const. art. III, § 4 (consideration of bills); Pa. Const. art. IV § 15 (approval of bills; vetoes);  ***See McGinley v. Scott***, 164 A.2d 424, 430 (Pa. 1960) (explaining that "[a] law is a bill that has been passed by a majority of the members of both Houses of the General Assembly and has […] been signed by the Governor[.]").  The terms of § 14 are clear and unambiguous.  Pursuant to 1 Pa.C.S.A. §§ 1921 and 1926, therefore, the UPIA applies retroactively in this case to the Trust.

We now turn to the statutory language, beginning with § 8103(a), which mandates that a fiduciary, when "allocating receipts and disbursements to or between principal and income […] shall administer a trust or estate in accordance with the governing instrument, even if there is a different provision in this chapter."  20 Pa.C.S.A. § 8103(a)(1).[5]  Where the governing

_____

[5]  Section 8103 provides in full as follows:

> **(a) Allocation.--**In allocating receipts and disbursements to or between principal and income and with respect to any matter within the scope of this chapter, the following shall apply:

*(Footnote Continued Next Page)*

instrument does not contain a provision that differs from what the UPIA requires, the fiduciary must follow the UPIA.  20 Pa.C.S.A. § 8013(a)(3).  In

---

> (1) A fiduciary shall administer a trust or estate in accordance with the governing instrument, even if there is a different provision in this chapter.
>
> (2) A fiduciary may administer a trust or estate by the exercise of a discretionary power of administration regarding a matter within the scope of this chapter given to the fiduciary by the governing instrument, even if the exercise of the power produces a result different from a result required or permitted by this chapter.  No inference that the fiduciary has improperly exercised the discretionary power shall arise from the fact that the fiduciary has made an allocation contrary to a provision of this chapter.
>
> (3) A fiduciary shall administer a trust or estate in accordance with this chapter if the governing instrument does not contain a different provision or does not give the fiduciary a discretionary power of administration regarding a matter within the scope of this chapter.
>
> (4) A fiduciary shall add a receipt or charge a disbursement to principal to the extent that the governing instrument and this chapter do not provide a rule for allocating the receipt or disbursement to or between principal and income.
>
> **(b) Discretionary power.**--In exercising a discretionary power of administration regarding a matter within the scope of this chapter, whether granted by the governing instrument or this chapter, including sections 8104 (relating to trustee's power to adjust) and 8105 (relating to power to convert to unitrust), a fiduciary shall administer a trust or estate impartially based on what is fair and reasonable to all of the beneficiaries, except to the extent that the governing instrument clearly manifests an intention that the fiduciary shall or may favor one or more of the beneficiaries.  A determination in accordance with this chapter is presumed to be fair and reasonable to all of the beneficiaries.

20 Pa.C.S.A. § 8103.

examining Appellant's first argument, we explained that the Trust instrument does not have express language cabining the Trustee's discretion to adjust. The Trustee was therefore required to follow the dictates of the UPIA in adjusting between principal and income.

Several provisions of the UPIA governed the Trustee's actions in this case. Per § 8103(b), the Trustee is required to act impartially and do what is fair and reasonable to all of the beneficiaries, unless the governing instrument expressly favors one beneficiary over the others (it does not; neither party claims otherwise). Thus, the Trustee was required to manage the Trust assets in a manner fair and reasonable to Levy, as current income beneficiary, and the three brothers who are the remainder beneficiaries.

Section 8104, in turn, governs the specifics of a trustee's management of principal and income adjustments. Per § 8104(a), a trustee

> [M]ay adjust between principal and income by allocating an amount of income to principal or an amount of principal to income to the extent the trustee considers appropriate if:
>
> (1) the governing instrument describes what may or must be distributed to a beneficiary by referring to the trust's income; and
>
> (2) the trustee determines, after applying the rules in section 8103(a) (relating to fiduciary duties; general principles), that the trustee is unable to comply with section 8103(b).

20 Pa.C.S.A. § 8104(a).

In applying § 8104(a), we turn to the applicable Uniform Law Comment, which synthesizes the statutory requirements of § 8104(a):

Section 104(a) [20 Pa.C.S. § 8104(a)] authorizes a trustee to make adjustments between principal and income if three conditions are met: (1) the trustee must be managing the trust assets under the prudent investor rule; (2) the terms of the trust must express the income beneficiary's distribution rights in terms of the right to receive "income" in the sense of traditional trust accounting income; and (3) the trustee must determine, after applying the rules in section 103(a) [20 Pa.C.S. § 8103(a)], that he is unable to comply with section 103(b) [20 Pa.C.S. § 8103(b)].

20 Pa.C.S.A. § 8104, Uniform Law Comment.[6]

_____

[6] Our Statutory Construction Act permits reliance on official commentary:

The comments or report of the commission, committee, association or other entity which drafted a statute may be consulted in the construction or application of the original provisions of the statute if such comments or report were published or otherwise generally available prior to the consideration of the statute by the General Assembly, but the text of the statute shall control in the event of conflict between its text and such comments or report.

1 Pa.C.S.A. § 1939. And because the UPIA is a uniform act adopted by many states, we must adhere to § 1927, which provides: "Statutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them." 1 Pa.C.S.A. § 1927. The Uniform Law Comments we consult throughout this opinion serve precisely that purpose. They are the work product of the Uniform Law Commission, also known as the National Conference of Commissioners on Uniform State Laws. They are not part of Act 50.

We observe, also, that Appellant filed a nearly identical action against the Trustee in Massachusetts regarding a trust under which Levy is the current income beneficiary and Appellant and his brothers are the remainder beneficiaries. The Supreme Judicial Court of Massachusetts rejected Appellant's arguments and upheld the Trustee's exercise of discretion under the Massachusetts UPIA. *In re Trusts Under the Will of Kline*, 244 N.E.2d 1011 (Mass. 2024). The decision of a sister state interpreting the same provisions of a uniform act is entitled to great deference from the Courts of Pennsylvania. *Koken v. Reliance Ins. Co.*, 893 A.2d 70, 83 (Pa. 2006). Our analysis in the main text is in accord with that of the Supreme Judicial Court of Massachusetts, and we reach the same result.

The first of these three requirements is met, as Pennsylvania has codified the prudent investor rule. 20 Pa.C.S.A. § 7201, *et. seq.*[7] The prudent investor rule, as with the UPIA, applies except as otherwise provided by the governing instrument. 20 Pa.C.S.A. § 7202(a). Appellant does not address the prudent investor rule and thus does not dispute that the Trustee was required to manage the Trust investments in accordance with it.

Likewise, the applicability of the second Uniform Law Comment factor (which is essentially a paraphrase of § 8104(a)(1)) is clear. The Trust instrument, as already quoted above, mandates the distribution of income to Levy: "My Trustees shall distribute to each daughter all of the net income of her trust in convenient periodic installments." Will, Article Sixth, ¶ (D)(1). Appellant's argument to the contrary rests on his unsupported assertion that the Trustee made distributions from principal in this case, rather than adjustments between principal and income.

The third Uniform Law Comment factor is a paraphrase of § 8104(a)(2). Under that subsection, the Trustee must consult with § 8103(a), which requires the compliance with the governing instrument when necessary, or compliance with the UPIA otherwise. Because the UPIA governs this case, the

---

[7] "A fiduciary shall invest and manage property held in a trust as a prudent investor would, by considering the purposes, terms, and other circumstances of the trust and by pursuing an overall investment strategy reasonably suited to the trust." 20 Pa.C.S.A. § 7203(a). The prudent investor rule is governed by 20 Pa.C.S.A. §§ 7201-7214. Pennsylvania enacted its prudent investor statute in 1998, prior to the enactment of the UPIA.

Trustee needed to determine that he could **not** comply with § 8103(b); that is, that he could **not** do what is fair and reasonable to all beneficiaries **without** adjustments between principal and income. The Uniform Law Comment goes on to explain that the "purpose of [§ 8104] is to enable a trustee to select investments using the standards of the prudent investor without having to realize a particular portion of the portfolio's total return in the form of traditional trust accounting income such as interest, dividends, and rents." 20 Pa.C.S.A. § 8104, Uniform Law Comment. Further,

> If a trustee who is operating under the prudent investor rule decides that the portfolio should be composed of financial assets whose total return will result primarily from capital appreciation rather than dividends, interest, and rents, the trustee can decide at the same time the extent to which an adjustment from principal to income may be necessary under [20 Pa.C.S.A. § 8104].

*Id*.

In his answer to Appellant's petition, the Trustee explained that, in 2021, the Trust's principal increased from $840,000.00 to $995,000.00. Answer to Petition for Accounting, 3/23/23, at ¶ 16. Accordingly, the Trustee explained, in an April 7, 2022, email to Appellant, that an adjustment to principal and income was warranted:

> In a world in which principal values have achieved significant growth and income has remained quite low, it is not at all uncommon for trustees to exercise [the power to adjust principal and income]. And in doing so, it is also not uncommon for trustees to implement this by making an adjustment in order to provide a percentage payout to the income beneficiary.
>
> Here, the trusts have indeed grown substantially over time while the net income of the trusts has not. For 2021, the net

income was approximately 2.09% of the ending principal value of the trusts.

> At [Levy's] request, and after reviewing carefully her cost of living and her other resources, and after taking into account all of the other relevant factors required by the law, I determined for 2022 to exercise this power to adjust (shifting principal to income) in order to pay out to her as income $120,000 for this year, which is approximately 3.2% of the three year average value of the trusts based on the December 31 values for the last three years. Based on advice, I believe this payout is likely to maintain the inflation adjusted value of the trusts over time while providing [Levy] with a more equitable payout.

Email from Trustee to Appellant, 4/7/22.[8]  In other words, the Trustee did not believe Levy, as income beneficiary, was receiving her fair share as compared to Appellant and the other remainder beneficiaries, who will divvy up the principal upon Levy's death.

Likewise, the Trustee's law firm provided the following explanation to Appellant:

> One of the primary purposes of the Principal and Income Act is to allow the trust assets to be invested in the manner that is reasonably suited to the purposes of the trust, without having to realize a particular portion of the investment portfolio's total return in the form of traditional trust accounting income, such as interest, dividends, and rent.  […]  Although the trusts have experienced significant growth of principal over the years, the income of the trusts has not kept pace.
>
> […]
>
> One approach to address this circumstance would be to modify the investment strategy of the trusts by shifting from growth investments to investments that pay higher current income.  The consequences of this could be lower long term

---

[8]  This email appears in the certified record as part of Exhibit C to Appellant's January 30, 2023, petition for accounting.

returns and capital gains tax costs from selling equity assets. The statutory power to adjust provides an alternative approach that enables trustees to continue to invest for long term returns while providing an equitable distribution of income.

Email, 4/21/22, from Richard L. Horwitz to Appellant.[9] In other words, the Trustee believed that without adjustments, the growth of the Trust's principal would be disproportionate to the Trust's production of income, thus favoring the remainder beneficiaries at the expense of Levy.

Appellant does not directly challenge the Trustee's reasoning. Rather, Appellant expresses his dissatisfaction with the long-term growth of the Trust's principal. He argues that, from 1992 to 2024, the value of three trusts[10] the Trustee manages for Appellant's family increased in value from $1.53 million to $3.74 million. Appellant's Brief at 9. Per Appellant, if the Trustee had invested the assets of these three trusts in a Dow Jones index fund, their value would have increased, over that same span of time, to $18.66 million dollars. *Id.* Assuming without deciding that Appellant's numbers are correct, his argument misses the point. The Trustee's long-term growth strategy, viewed in isolation, is not at issue. The issue here is the growth of the Trust's principal in relation to its production of income. Appellant offers

_____

[9] This email appears in the certified record as part of Exhibit C to Appellant's January 30, 2023, petition for accounting.

[10] Here, Appellant references three trusts, the Trust currently at issue and two that were the subject of litigation under the law of Massachusetts as noted above. *In re Will of Kline*, 240 N.E.2d 1011.

nothing to counter the Trustee's assertion that, for the years in question, the increase in value of the Trust's principal was disproportionate to its production of income, thus resulting in a disproportionate benefit to the remainder beneficiaries. The UPIA authorizes adjustments between principal and income in precisely these circumstances.

In summary, we have concluded that the Trust instrument does not preclude adjustments to principal and income, nor do the terms of the Trust instrument require a result different from the one that obtains under the UPIA in this case. The Trustee's adjustments were authorized under the applicable provisions of the UPIA, and he did not abuse his discretion in making them.[11] Appellant offered no persuasive argument to the contrary.[12] We therefore affirm the orphans' court's order.

Order affirmed.

_____

[11] And as noted in the main text, Levy, S.J., and W.J. signed a release and consent agreement approving of the Trustee's adjustments.

[12] Appellant also argues that the application of § 8104 amounts to an unconstitutional taking. Appellant did not raise this argument before the orphans' court and therefore has waived it. Pa.R.A.P. 302(a).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/31/2025